# Miller v. The State.

*Indictment for Murder.*

1. *Witness may testify that defendant appeared angry.*—It is competent for a witness to testify, on a trial for murder, that the defendant appeared to be angry.

2. *Witness may testify that a pistol would have to be "very close to clothing to scorch it."*—On a trial for murder it is not error to permit a witness for the State to testify that a pistol would have to be very close, when fired, to scorch clothing, since, while not necessary to be proven, there can be no injury to the defendant in permitting a fact to be proven which is already known to the jury exactly as testified to. (Head J. dissenting.)

3. *Presumption of malice from use of deadly weapon.*—The intentional taking of life with a deadly weapon implies a formed design to take life, whether it be a wilful, malicious, deliberate and premeditated killing, constituting murder in the first degree; or malicious, merely constituting murder in the second degree; or without malice, constituting manslaughter; or whether the homicide was excusable or justifiable.—(*Mitchell v. State*, 60 Ala 26, departed from on this point )

4. *Same—charge of court.*—A charge that, "when one intentionally kills another with a deadly weapon, the law presumes that it was maliciously done, and was done with formed design to take life, unless the evidence which proves the killing, shows the excuse or extenuation," is free from error.

5.—*Where the killing is not denied, the court may so state in its charge.*— It is not error for the court to state in its charge to the jury that the killing of the deceased by defendant, intentionally and with a deadly weapon, was not denied, when it is but the statement of a mere fact which was clearly and fully shown, without dispute, by the evidence.

6. *Burden of proof as to self defense.*—It is proper for the court to instruct the jury on a trial for murder where defendant invokes self defense, that the burden rests on the defendant to prove self defense.

7. *Charge of court as to malice.*—A charge that "the court charges the jury that in cases of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the *onus* of re-

[Miller v. The State.]

pelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice; and whenever malice is shown, and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any less degree of homicide than murder" is free from error.

8. *Charge of court as to apparent necessity that will excuse killing.* A charge that "the court charges the jury the apparent necessity which will excuse the taking of human life under the doctrine of self-defense in cases of homicide involves two considerations: First, the defendant himself must have entertained an honest belief in the existence of such necessity; and, second, the circumstances surrounding him must have been such as to impress a reasonable man, under the same state of facts, with the belief of his imminent peril, and of the existence of an urgent necessity to take the life of his assailant, as the only apparent alternative of saving his own life, or else preventing the infliction on him (the defendant) of grievous bodily harm," is free from error.

9. *Charge of court as to constituents of self-defense.*—A charge that "the court charges the jury that before the jury can acquit the defendant on the ground of self-defense three essential elements must concur: First, the defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences, in this respect, of any wrongful word or act; second, there must have existed at the time, either really or so apparently as to lead a reasonable mind to the belief that it actually existed a present, imperious, impending necessity to shoot in order to save himself from great bodily harm; third, and there must have been no other reasonable mode of escape by retreat or by avoiding the combat with safety," is free from error.

10. *Charge of court that defendant must be free from fault.*—A charge that "the court charges the jury, to make the plea of self-defense available, the defendant must be without fault. If he was himself the aggressor, he cannot invoke the doctrine of self-defense, even if the deceased was approaching him in a hostile manner. And whether the necessity to take the life of the deceased was real or only apparent, if brought about by the design, contrivance, or fault of the defendant, he cannot be excused on the plea of self-defense," is free from error.

11. *Charge of court as to impending danger, real or apparent.*—A charge that "the court charges the jury, when the defendant sets up self-defense in justification or excuse of a killing, the burden of proof is upon him to show the jury by the evidence that there was a present impending danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other probable means of escape, unless the evidence which proves the homicide proves also its excuse or justification," is free from error.

12. *Charge of the court as to malice and premeditation.*—A charge that "the court charges the jury that if the defendant, in Lowndes

[Miller .v. The State.]

county, and before the finding of this indictment, purposely killed the deceased, Eugene Curtis, by shooting him with a pistol, with a wickedness or depravity of heart towards said deceased, and the killing was determined on beforehand and after reflection (for however short a time before the fatal shooting is done is immaterial), the defendant is guilty of murder," is free from error.

13. *Charge of court as to manner of weighing the defendant's own testimony.*—A charge that "the court charges the jury that in determining the weight they will give to the defendant's testimony they should consider, along with all the circumstances having any bearing on the matter, the fact that he is the defendant, and the fact, if they so find, that his testimony is in conflict with other evidence in the case," is free from error.

14. *Same.*—A charge that "the court charges the jury that the interest the defendant has in the case may be considered by them in weighing his own evidence," is free from error.

15. *Charge of court as to duty of jury, to adopt construction favoring innocence instead of guilt.*—A charge "whenever any act done by the defendant is capable of two constructions, one consistent with his innocence, and the other tending to establish his guilt, it is the duty of the jury to put upon the act the construction consistent with his innocence," is properly refused.

16. *If jury has reasonable doubt whether defendant acted in self-defense they must acquit.*—While the burden of proof is upon the defendant to show self-defense, yet, if upon all the evidence, the jury have a reasonable doubt whether he acted in self-defense or not, he is entitled to the benefit of the doubt and to an acquittal.

17. *Same; charge of court.*—A charge that "if, after considering the whole evidence, including the testimony of defendant, the jury have a reasonable doubt as to whether Miller shot Curtis in self-defense, or under such circumstances as to make him guilty of a crime, it is their duty to give him the benefit of the doubt, and acquit him," is properly refused, as failing to set forth the constituents of self-defense. (Head, J., dissenting.)

18. *Proof of defendant's good character and charge of court thereon.* Good character of the accused is a fact to be considered in connection with all the other evidence, and when so considered may sometimes properly generate a doubt of guilt when the other evidence without it would leave no doubt, but the jury should not be instructed to single out the evidence of good character and from it ·alone, without considering its connection with the other evidence, reach the conclusion that a reasonable doubt exists.

19. *Same.*—A charge that "the court charges the jury that the rule of law is settled in this State that in all criminal prosecutions the accused may offer evidence of his previous good character, not only where a doubt exists on the other proof, but even to generate a doubt as to his guilt," is properly refused, as singling out the evidence of good character, and authorizing the jury from it, alone,

without considering the other evidence, to conclude that a reasonable doubt of guilt exists.

20.  *Charge of court as to threats by deceased.*—A charge that "if the jury believe from the evidence that Curtis brought on the difficulty at the time it occurred, and that defendant was not at that time at fault, and if they further believe that the circumstances were at that time such as to create in the mind of a reasonable man a belief that he was in imminent danger of his life or of great bodily harm, and that he could not flee without adding to his danger, then the fact, even if it be a fact, that defendant had made threats against Curtis, cannot deprive him of the right to an acquittal," was properly refused, as implying doubt or suspicion upon the State's evidence of threats.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JOHN R. TYSON.

The appellant was indicted and tried for the murder of E. E. Curtis, by shooting him with a pistol, and was convicted of murder in the second degree, and was sentenced to the penitentiary for 20 years.

The evidence for the State, as shown by the bill of exceptions, tended to show that on the evening of September 12, 1893, just after supper, and a few minutes after the defendant had eaten supper, and had left his boarding house, four pistol shots were heard; that upon several persons going to the place where the shooting occurred, they found E. E. Curtis lying upon the sidewalk wounded from a pistol shot; that he was carried to the house of Miss Bowie, a short distance away, but died before he got to the house. The testimony of the witnesses for the State further tended to show that the shooting occurred very shortly after the defendant left the house of Miss Bowie, where he boarded; not longer than it would have taken defendant to have walked from the boarding house, where he ate his supper, to the place of the shooting. It was not denied that the defendant did the shooting. One of the witnesses for the State testified that she saw all of the flashes of the pistol shots, and that after the first flash the others seemed to come from a pistol in the hands of a person who was moving away.

Miss Bowie, one of the witnesses for the State, at whose house the defendant boarded, testified among other things, that "the defendant came to her house to supper on the evening of the killing; that he did not

engage in conversation, speaking only when he was spoken to; that he appeared angry. He was generally pleasant and talkative, but that night he was not." The defendant objected to and moved to exclude the words "appeared angry." The court overruled this objection, and the defendant duly excepted.

The defendant as a witness, in his own behalf, testified that after eating his supper he left the house of Miss Bowie; that as he was walking down the street he saw Curtis coming up the street; that as he approached Curtis he stepped out to one side and Curtis passed him; that after Curtis had passed on, defendant, Miller, stepped back into the path; that just as he got back into the path Curtis turned upon him, and cursing him most vilely, drew something from his pocket which glittered, and startedtowards him; that he backed off from Curtis, still watching him, and that as Curtis approached him, immediately upon drawing something from his pocket, he, the defendant, drew his pistol and fired one shot at Curtis; that seeing Curtis still advancing on him he fired three others; that when he ceased firing he saw that Curtis was no longer approaching him, and he then walked off; that he was very much excited; that when he got a short distance away he heard some loud talking, which satisfied him that he had shot Curtis; and that he walked from Benton, the place of the shooting, to Montgomery that night, reaching the latter place about 6 o'clock the next morning. It was shown that the night was very dark. The defendant proved by several witnesses that they had known him all of his life, knew both his general character and his character for peace and quiet, in the community in which he lived, and that his character was very good in both respects.

In the general charge to the jury the court, among other things, instructed them as follows: (1.) "Whenever one man intentionally kills another with a deadly weapon, the law presumes that it was maliciously done; that it was done with formed design to take life unless the evidence which proves the killing shows the excuse or extenuation." (3.) "In this case, the killing is not denied, nor is it denied that it was done intentionally with a deadly weapon, and the law puts upon the defendant the burden of rebutting the presumption of malice." (4.) "In this case, the burden is upon the de-

[Miller v. The State.]

fendant to reasonably satisfy your minds that he acted in self-defense.'' To each of these portions of the court's general charge the defendant separately excepted, and also separately excepted to the court's giving to the jury at the request of the State, the following written charges : (1.) ''The court charges the jury that in cases of homicide the law presumes malice from the use of a deadly weapon, and casts on the defendant the *onus* of repelling the presumption, unless the evidence which proves the killing, shows also that it was perpetrated without malice; and whenever malice is shown, and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any less degree of homicide than murder.'' (2.) ''The court charges the jury the apparent necessity which will excuse the taking of human life under the doctrine of self-defense, in cases of homicide involves two considerations : 1st. the defendant himself must have entertained an honest belief in the existence of such necessity; and, 2d, the circumstances surrounding him must have been such as to impress a reasonable man, under the same state of facts, with the belief of his imminent peril, and of the existence of an urgent necessity to take the life of his assailant, as the only apparent alternative of saving his own life, or else of preventing the infliction on him (the defendant) of grievous bodily harm.'' (3.) ''The court charges the jury that before the jury can acquit the defendant on the ground of self-defense, three essential elements must concur : 1st. The defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences, in this respect, of any wrongful word or act; 2d, there must have existed at the time, either really or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, imperious, impending necessity to shoot in order to save himself from great bodily harm; 3d, and there must have been no other reasonable mode of escape by retreat or by avoiding the combat with safety.'' (5.) ''The court charges the jury to make the plea of self-defense available, the defendant must be without fault. If he was, himself, the aggressor, he can not invoke the doctrine of self-defense, even if the deceased was approaching him in a hostile manner, and whether the necessity to take the life of the deceased was

real or only apparent, if brought about by the design, contrivance or fault of the defendant, he can not be excused on the plea of self-defense." (6.) "The court charges the jury, when the defendant sets up self-defense in justification or excuse of a killing, the burden of proof is upon him to show the jury, by the evidence, that there was a present impending danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other probable means of escape ; unless the evidence which proves the homicide proves also its excuse or justification." (7.) "The court charges the jury that if the defendant in Lowndes county and before the finding of this indictment purposely killed the deceased, Eugene Curtis, by shooting him with a pistol, with a wickedness or depravity of heart towards said deceased, and the killing was determined on beforehand and after reflection, (for however short a time before the fatal shooting was done is immaterial) the defendant is guilty of murder." (8.) "The court charges the jury that in determining the weight they will give to the defendant's testimony, they should consider along with all the other circumstances having any bearing on the matter, the fact that he is the defendant, and the fact, if they so find, that his testimony is in conflict with other evidence in the case." (9.) The court charges the jury that the interest the defendant has in the case may be considered by them in weighing his own evidence."

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "Whenever any act done by the defendant is capable of two constructions, one consistent with his innocence, and the other tending to establish his guilt, it is the duty of the jury to put upon the act the construction consistent with his innocence." (2.) "If after considering the whole evidence, including the testimony of defendant, the jury have a reasonable doubt as to whether Miller shot Curtis in self-defense or under such circumstances as to make him guilty of a crime, it is their duty to give him the benefit of the doubt and acquit him." (3.) "The court charges the jury that the rule of law is settled in this State, that in all criminal prosecutions the accused may offer evidence of his previous good character, not only where a doubt exists on the other proof,

[Miller v. The State.]

but even to generate a doubt as to his guilt." (4.) "If his flight was from the fear of violence from the friends of Curtis, then his flight is not a criminating fact." (5.) "If the jury believe from the evidence that Curtis brought on the difficulty at the time it occurred, and defendant was not at that time at fault, and if they further believe that the circumstances were at that time such as to create in the mind of a reasonable man, a belief that he was in imminent danger of his life or of great bodily harm, and that he could not flee without adding to his danger, then the fact, even if it be a fact, that defendant had made threats against Curtis, can not deprive him of the right to an acquittal."

TOMPKINS & TROY, J. C. RICHARDSON, and C. A. WHITTEN, for the appellant.—The witness for the State was allowed to testify against the objection of the defendant that he, Miller, "appeared angry." This was mere opinion evidence and not admissible. It was not a "short-hand rendering" of the facts; the facts from which witness drew the inference should have been given. In the following cases it was held error to allow witness to say that defendant "looked serious:"—*Johnson v. State*, 17 Ala. 618, 623-4; "looked excited," *Gassenheimer v. State*, 52 Ala. 313, 317-18; "looked downcast," *McAdory v. State*, 59 Ala. 92; "seemed afraid," *Lewis v. State*, 96 Ala. 6, 9-10.

A witness was asked by the State "If the muzzle of a pistol would not have to be very close to clothing to scorch it." The defendant objected, the court overruled the objection and defendant excepted. He answered that it would. This answer was nothing but the opinion of the witness, and the ruling can only be defended on the ground that the witness was an expert. All of the evidence on his qualifications as an expert is found in his own testimony, and that was that he had not had a great deal of experience with pistol shooting but that after the killing, he had made some experiments to ascertain at what distance powder from a pistol would scorch clothing. He also testified that it depended upon the character of the powder. He did not testify how many experiments he made, nor as to the condition or circumstances under which he made them. This certainly, does not make an expert. An expert is one who

has special knowledge as to the particular subject in hand, derived from study and experience.—*Mobile Life Ins. Co. v. Walker*, 58 Ala. 290, 294–5 ; *Root v. State*, 61 Ala. 89 ; *Prince v. State*, 100 Ala. 144; Rapalje–Witnesses, Section 293; Rogers Expert Testimony, Sections 1–3 ; Lawson's Expert and Opinion Evidence, p. 195; 7 Am. & Eng. Encyc. of Law, 491, The question was objectionable, and the evidence inadmissible for a number of other reasons. Such a question would call for an answer which would be too indefinite to mean anything, and an answer which would leave the minds of the jury as much in the dark as they were before, and leave each juryman to speculate as to what the answer meant. One might think that the muzzle of the pistol would be very close to the clothing if it were five feet off; while another might not think it so unless it was within a few inches.

Again, it is not a matter for even an expert's opinion unless that opinion is an opinion as to the effect of firing a pistol of the same character as the pistol fired by appellant under similar conditions to those under which the pistol in this case was fired. The witness himself testified that the distance would depend upon the kind of powder, and it is a matter of common knowledge that it also depends upon many things, such as the amount of the charge, the bore of the pistol, the condition of the atmosphere, and the character of the clothing. Some clothing is more easily scorched than others ; certainly, on a calm, still day or night the flame from the muzzle of a pistol will go a greater distance, than it will if it is shot on a blustering, wintry day, or night, against the wind, and a large bore gun charged with a large quantity of powder will emit a flame a much greater distance than will a small bore one with a small charge of powder.

And even if the witness had been an expert, it was not permissible for him to give a general opinion as he did here. As it was shown or otherwise known that the distance at which powder fired from a pistol would scorch clothing, depended upon so many conditions, the only way an expert should have been permitted to testify was to state his opinion upon a hypothetical case, based upon the facts proved in this case.—1 Greenleaf on Evidence, *supra.; Page v. The State*, 61 Ala. 16.

The Attorney-General makes no argument in support

of this ruling of the court, but cites *Tesney's Case*, 77 Ala. 33, to support it. It is an authority against him. In that case, the court held it error to allow the witness to testify as to the result of his experiments, just such as were made by the witness May, and here the witness was allowed to testify not to the result, it is true, of the particular experiment. but as to the impression that result made on his mind. He did not testify that his experiments showed that the pistol would have to be within five or six inches of the clothing, but he did testify that it would have to be very close, and he showed that he was testifying to this because the result of his experiments showed it. He was testifying as much to the result of the experiment as if he had testified in so many words that his experiments showed that result. In the *Tesney case*, too, the witness had used defendant's pistol. It is clear he was testifying to a conclusion reached by him from those experiments. There is no difference in principle between the evidence which the court in that case held was erroneously admitted, and that which was admitted here. That question has again been before the court in the case of *George B. Miller v. The State*, recently decided, and what was there determined has been reaffirmed. Such evidence was held inadmissible. But the *Tesney Case* is a conclusive authority in support of our contention on another point; there, a witness who testified that he had handled fire arms very frequently, and was skilled in their use, especially in the use of the pistol, (which May certainly was not), was not allowed to testify as to the distance the muzzle of a pistol would have to be from clothing to burn it, and this court held that the court below was right in refusing to admit his testimony. If that be the law, then *a fortiori*, the court erred in permitting May to testify that it would have to be very close.

Again, testimony of this kind ought not to be admitted for another reason : May, it was shown, was without any knowledge on the subject inquired about, until after the killing of Curtis, then he goes out and makes some experiments, how many, we are not told, for the purpose of attempting to qualify himself as a witness in this particular case. Such testimony would put a defendant absolutely in the power of his enemies. They could make experiments to testify to the conclusion

4

drawn by them from such experiments, and he would be powerless to rebut them.

The first part of the court's general charge excepted to is clearly wrong in two respects : 1st. In declaring that the law presumes, that an intentional killing with a deadly weapon was done with a formed design ; and, 2nd. In limiting the evidence which rebuts the presumption to the evidence proving the killing.

There is no presumption of formed design from the use of a deadly weapon, the only presumption arising therefrom is that of malice. This court has held expressly that "formed design" embraces every element of murder in the *first degree.*—Opinion of Stone, J., *Mitchell's Case,* 60 Ala. 28.

Then the effect of the charge was to instruct the jury that from the intentional use of a deadly weapon, the law presumed the defendant guilty of murder in the first degree. This takes away from the jury entirely, where the evidence shows that one kills another by the intentional use of a deadly weapon, the right to say whether or no, the other elements exist which the statute says are necessary, to constitute murder in the first degree, namely,—wilfulness, deliberation, and premeditation. It is the province of the jury to find as a fact if these other elements exist and not a presumption of law. *Hornsby v. The State,* 94 Ala. 67–8.

The charge might have been justifiable at common law where there were no degrees of murder, and where all malicious killing was murder, but it is entirely erroneous under our statutory division of the crime, into degrees. All malicious killing, is not murder in the first degree, nor is any killing done, although maliciously, murder in the first degree, unless it is also done with wilfullness, deliberation, and premeditation, and that it was so done, is a question of fact for the jury to find.— *Hornsby Case, supra,* on p. 67 ; *Stokes v. The People,* 53 N. Y. on pp. 177–80.

The charge was also erroneous in limiting the rebutting evidence to the evidence proving the killing, especially was that error under the facts of this case. It instructs the jury that the law presumes malice and formed design, unless the excuse or justification is shown by the evidence proving the killing. It excludes altogether from the consideration of the jury the other

[Miller v. The State.]

evidence in the case.—*Smith's Case*, 68 Ala. 430–1; *Eiland v. The State*, 52 Ala. 322; *Tesney v. The State*, *supra*.

The next charge was a clear invasion of the province of the jury. It asserts that the defendant admitted that he intentionally killed Curtis, that he fired at him for the purpose of killing him. There is nothing in the defendant's testimony which authorized the court to assert as a fact to the jury that the defendant did not deny that he intentionally killed Curtis. He did testify that seeing Curtis approach him with what he supposed was, and what turned out afterwards to be, a deadly weapon, he fired at him but not that he did so with the intention to kill. A man may fire at another without the intention to kill. It is the province of the jury to determine from all the facts and circumstances what the intention was, and not for the court to instruct them that defendant does not deny that such was his intention. The intention with which a man did an act is an inference to be drawn by the jury from proved facts and circumstances, and the court has no right to draw it.— *Domingus' Case*, 94 Ala. 9; *Baine's Case*, 70 Ala. 4; 3 Brickell's Digest, p. 289, Sec. 628.

The first charge given at the request of the State, is objectionable.

1st. Because it asserts that the law presumes malice from the mere fact that a deadly weapon is used, and omits the qualifying word, "intentional." It is only from the intentional use of a deadly weapon that the law presumes malice.

It is also defective in declaring that unless the evidence proving the killing shows that it was done without malice, then the burden is cast on the defendant to repel the presumption by other evidence. The word "shows," used in this connection, has but two meanings. It is an active verb and means when used to express the effect of evidence, "proves or makes manifest." Then the charge is that unless the evidence showing the killing proves or makes manifest that it was done without malice, the law presumes that there was malice. The charge then requires too high a degree of proof. It does not require the criminating evidence itself to satisfy the minds of the jury beyond a reasonable doubt that there was malice, before convicting of murder, but de-

clares that the law casts on the defendant, unless that evidence proves that he had no malice, the burden of rebutting that presumption.—*Prince v. The State*, 100 Ala. 144.

The third charge is in effect, this, that if it appears to the jury that there was actually another means of escape with safety, then they can not acquit the defendant. They are not instructed that if the circumstances were such as to lead the mind of a reasonable man to come to the honest belief that he could not escape with safety, then he was entitled to an acquittal, although the evidence on the trial may show that he could not, in fact, have escaped; but they are required to find as a fact that there existed in reality no other means of escape, and are instructed that if they do not so find, then the defendant is not entitled to an acquittal, although he struck in self-defense, and under the honest belief, founded on appearances which justified a reasonable man in forming such a belief that he could not so escape. A man is no more required to determine whether or no, a mode of escape actually exists, than he is required to determine whether or no, there is actual danger to life or limb. Any charge which denies the right to strike where the danger is only apparent, or where the absence of a mode of escape is only apparent, is clearly wrong.— *Thomas' Case*, 17 So. Rep. 460.

The fifth charge is in effect that the defendant can not avail himself of the defense of self-defense, unless he shows that he was without fault. The charge is not only defective in omitting to charge where the burden of proof lies as to who provoked the difficulty, but it is so framed as to actually shift that burden. It declares that to make the plea good, the defendant must be without fault. That can have but one construction, and that is that defendant can not make his plea of self-defense good unless he shows he was without fault. The burden is on the State to show that defendant was at fault, and it must show it beyond a reasonable doubt.— *Whitaker's Case*, 17 So. Rep. 456.

Besides, the law does not require one to be absolutely without fault, but only reasonably so.

The sixth charge, given at the request of the State, is more clearly obnoxious to the objection urged against the first than is the first itself. It declares that the de-

fendant must prove, must make manifest, that he acted in self-defense by outside evidence, unless the evidence proving the homicide has also proved the excuse or justification. Although the evidence proving the killing in this case, did not *prove* the excuse or justification, if it generated a reasonable doubt in the minds of the jury as to whether or no, defendant fired in self-defense, he was entitled to the benefit of that doubt, because it was necessarily a doubt as to whether he acted unlawfully. Certainly the burden of proof was not shifted.— *Wharton's Case*, 73 Ala. 366 ; *Prince's Case, supra.*

The charge asked by the State, requires the jury if they find certain facts to be true, to convict the defendant of murder. It nowhere indicates the degree of proof necessary to authorize a conviction. It says in effect, that if the jury find that defendant did the act, and in the manner, and with the motive named, then he was guilty of murder. It is clearly error.—*Rhea's Case*, 100 Ala. on pp. 121–2 ; *Pearson's Case*, 99 Ala. on pp. 151–2.

It is remarkable that in the record, it nowhere appears that the jury were ever instructed as to the degree of proof necessary to convict, and while the judge was very careful to insert in the bill of exceptions immediately following that part setting out the exceptions to his general charge, that the court fully instructed the jury on the law of self-defense, he nowhere shows that he instructed them either on the burden of proof or on the quantum of proof.

The second charge asked by the defendant, and refused, embodies a correct principle of law. No homicide can be a crime, unless it is unlawful, and the first thing that the jury must determine is that the act was unlawful, and that they must believe beyond a reasonable doubt. If the evidence generates a reasonable doubt of the act being unlawful, defendant is entitled to an acquittal. If it is done in self-defense, it is certainly not unlawful.—*Prince's Case*, 100 Ala. 144. If from all the evidence there is raised a reasonable doubt in the minds of the jury of defendant's having unlawfully killed the deceased, they certainly can not find beyond a reasonable doubt that he did so, and it must be immaterial as to what is the ground of that doubt.—*Hurd v. The State*, 94 Ala. 100 ; 9 Am. & Eng. Ency. of Law, 731.

The law allows the defendant in any criminal prose-

[Miller v. The State.]

cution to introduce evidence of his good character for the purpose of generating a doubt as to his guilt. It is not necessary that there shall be evidence for and evidence against which nearly balance each other before evidence as to good character is admissible. It does not merely perform the function of turning the scale; it goes further, and may perform the positive office of itself generating a doubt.—*Felix v. The State*, 18 Ala. 720, 725; 3 Am. & Eng. Encyc. of Law, 111. The only question that can be raised here is as to the form of the charge. The charge is correctly framed, and expresses no more than the right of the defendant on the subject. In the cases on the general subject of the evidence of defendant's good character those charges which simply declare the purpose of the introduction of the evidence are universally held good, and those charges which are held bad are without exception charges which invade the province of the jury by declaring on the sufficiency of the evidence.—*Felix v. The State*, 18 Ala. 720, 725; *Carsou v. State*, 50 Ala. 134; *Barnett v. State*, 83 Ala. 40.

The Attorney-General insists that "good character should never generate a reasonable doubt, but good character in connection with all the other evidence may so generate a doubt." We insist that this is no answer to the contention as to the correctness of the charge asked.

The charge simply instructs the jury as to the *purpose* for which such evidence *may be* admitted, and does not invade the province of the jury by telling them the effect that must be given to it.

The second objection of the Attorney-General seems to be founded on the supposition that the minds of the jury are diverted by the charge from other evidence in the case. This objection is not well taken because the charge does call attention to such other evidence by the clause,— "not only where a doubt exists on the other proof." Furthermore, the jury is left entirely free to give the evidence what weight they may see fit; they are only instructed that the law allows the defendant to introduce this evidence for a certain *purpose*. Telling the jury, that evidence is admissible for a certain *purpose* is very different from saying that it is *sufficient*, it is *enough* of itself to accomplish that purpose.

The fifth charge asked by defendant, and refused, re-

quired the jury to find affirmatively every fact necessary to make good the plea of self-defense. It simply asserts the proposition that even if the jury should find that defendant had made such threats, yet, if they also found that he was without fault at the time this difficulty occurred, and further found the other elements of self-defense, then the fact that he had made such threats would not prevent him from defending himself.

Whether the threats were made was a fact for the jury to determine, and it was right to instruct them what, even if they found them to have been made, would be their effect if they found certain other facts.—*Karr v. The State*, 17 So. Rep. 328, 332.

Wm. C. Fitts, Attorney-General, for the State.—Defendant objected to witness testifying that he (defendant), "appeared angry" on the night of the homicide. The court did not err in overruling the objection.—*Carney v. The State*, 79 Ala., 14; *Jenkins v. The State*, 82 Ala., 25. As to admissibility of testimony of State's witness that a pistol would have to be very close to clothing, when fired, to scorch it. See *Tesney v. The State*, 77 Ala., 33.

The three exceptions to the courts general charge are untenable. The portions of the charge singled out are fair statements of the law, and are supported by many previous decisions of this court.—*Hornsby v. The State*, 94 Ala., 55; *Hadley v. The State*, 55 Ala., 37; *Mitchell v. The State* 60 Ala., 28; *Gibson v. The State*, 89 Ala., 121; *Jenkins v. The State*, 82 Ala., 25.

All the remaining charges, 4, 5, 6, 7, 8, 9, 10 and 11 are copied verbatim from the case of *Wilkins v. The State*, 98 Ala., 1, and will not be commented upon.

The first charge asked by and refused to the defendant is bad on authority of *Fonville v. The State*, 91 Ala., 39; *Smith v. The State*, 88 Ala., 23. The jury is simply asked that if there are two equally reasonable theories they must find for the one favoring the defendant. It is a plain charge on the weight of the evidence. See authorities cited above.

Charge three is faulty. Good character never should generate a reasonable doubt, but good character in connection with all the other evidence, may so generate a doubt. Charge fifth is argumentative, and must have

proven misleading. The insertion of the word "even" in the sentence "even if it be a fact that defendant had made threats," tends to throw suspicion upon the State's testimony, and is fatal to fairness. The jury could not have failed to see the insinuation.

HEAD, J.—This court ruled in *Jenkins v. State*, 82 Ala., 25, that it was competent for a witness to testify that the defendant appeared to be mad. This ruling justified the admission of like evidence in the present case.

The witness, May, was permitted to testify for the State, that the muzzle of a pistol would have to be very close to clothing to scorch it. My brothers are of opinion that it is of common knowledge that the muzzle of a pistol must be very close to clothing, when fired, to scorch it; and while not necessary to be proven, there can be no possible injury to the defendant in permitting a fact to be proven which is already known to the jury, exactly as testified to. I dissent from that conclusion for two reasons: In the first place, I think it is a matter for expert testimony, and the witness was not shown to be expert in such matters. His testimony was that he had not had a great deal of experience with pistol shooting, but that since the killing, he had made some experiments to ascertain at what distance the powder from a pistol would scorch clothing; that it would depend somewhat on the character of the powder; that some powder was soft, and would be consumed very quickly, while other was in hard grains, and was much slower in being consumed; that it would depend very greatly upon the kind and character of the powder in a pistol as to the distance it would take to scorch clothing. Thus it appears, that there is a total want of evidence to show that the witness had any experience or observation whatever, in respect of the matter of inquiry, except several experiments, possibly not more than two, made after the killing. There is no attempt even to prove that those experiments had any similarity, in any particular, to the characteristics of the actual fatal assault for which the defendant was being tried; hence if the witness had given a practical, tangible, opinion as to the distance inquired about, it would have been an opinion based upon a species of knowledge utterly variant from

[Miller v. The State.]

that knowledge which the law says qualifies one to give his opinion as an expert.—*Tesney v. State*, 77 Ala., 33. But, again, it was, I think, improper to submit to the jury, to speculate upon, an opinion so vague and indefinite as that which the witness was permitted to give in this instance. It is not impossible that there were in the minds of the jurors, produced by this evidence, twelve different conceptions or conclusions as to the distance necessary for the powder from defendant's pistol to scorch the clothing of the deceased. How far these conceptions varied would be matter of mere conjecture. The jurors could not know what was meant by "very close" in the connection used. But in the view taken by my brothers, there was no error in admitting the testimony. It was, they hold, within the power of defendant, by cross-examination, to elicit all the facts in detail, within the witness's knowledge, and he cannot complain of the generality of the statement of the witness which, by such cross-examination, could have been obviated.

In our more recent rulings upon the subject, we departed from the definition of the term "formed design," as it was given in the case of *Mitchell v. State*, 60 Ala., 26. It is now held, in effect, that the intentional taking of life with a deadly weapon, implies a formed design to take the life, whether it be a willful, malicious, deliberate and premeditated killing, constituting murder in the first degree; or malicious, merely, constituting murder in the second degree; or without malice, constituting manslaughter; or whether the homicide was excusable or justifiable. The instruction, therefore, that when one intentionally kills another with a deadly weapon, the law presumes that it was maliciously done, and was done with formed design to take life, unless the evidence which proves the killing shows the excuse or extenuation, was free from error.—*Hornsby's Case*, 94 Ala., 55; *Burton's Case*, *post* herein.

The court also said to the jury in an instruction touching the same subject, that the killing of the deceased by the defendant intentionally with a deadly weapon, was not denied. This was a mere statement of a fact, by the court, which was clearly and fully shown by the evidence, without dispute, and which the court was, consequently, authorized to make.

The jury was correctly instructed that the burden was upon the defendant to prove self-defense.

Charges 1, 2, 3, 5, 6, 7, 8 and 9, given on request of the State, are substantial copies of instructions held by this court to be good, in *Wilkins v. State*, 98 Ala., 1. We adhere to those rulings.

Charge No. 1, requested by defendant, was ruled bad in *Smith v. State*, 88 Ala., 23; *Fonville v. State*, 91 Ala., 39.

. Whilst the burden of proof is upon defendant to show self-defense, yet, if upon all the evidence, the jury have a reasonable doubt whether he acted in self-defense or not, he is entitled to the benefit of the doubt and to an acquittal.—*Prince v. State*, 100 Ala., 144; *Hurd v. State*, 94 Ala., 100; 9 Am. & Eng. Ency. of Law, 731. Charge No. 2, requested by defendant, which was intended to state this principle, was, in the opinion of my brothers, faulty as an instruction, by reason of the fact that it failed to set forth the constituents of self-defense; for which vice charge No. 5, requested by the defendant, in *Roden v. State*, 97 Ala., 54, was held bad by this court. I feel constrained to dissent from this conclusion. The bill of exceptions shows that the court had before, in its oral charge and in special written instructions, fully explained to the jury the law of self-defense. Charge No. 2 was intended merely as an instruction upon the law of reasonable doubt, in connection with the plea of self-defense, and the guilt of the defendant generally, and I am unable to see the necessity, in such an instruction, when it is affirmatively shown that the jury was already fully informed by the court, what the legal constituents were, to set out those constituents. Suppose the court was requested to charge the jury that if they have a reasonable doubt of the defendant's guilt, arising from the evidence, they must acquit him, would it be contended that the charge should be refused because it failed to set forth all the legal elements of the crime, and the defenses relied upon as the bases of a claim to an acquittal? Self-defense being one of the defenses relied upon, its consideration by the jury, upon the question of guilt or innocence, was necessarily involved. Would the instruction, above supposed, be held vicious because it failed to set forth the constituents of that defense? I think such a ruling would be opposed to the

universal and never questioned practice of the courts everywhere; and in my judgment there can be no conceivable distinction, in principle, between the charge supposed, and that now under consideration; for the elements which enter into and constitute the crime, and the defenses to the charge thereof, involve legal principles which the jury must learn from the court, and which it is the duty of the court to give—a duty which it will be supposed the court performed. If the constituents of self-defense, upon a charge as to the law of reasonable doubt of guilt, in that connection, must be set forth in the charge, it seems to me the conclusion is irresistible that all the legal principles which enter into and characterize the crime and its defenses, would have to be set forth in such a charge as that I have above supposed; for the jury have no more information as to what those principles are, than they have of the legal constituents of self-defense. I think there is a difference in the offices of the charge in question, and that in *Roden v. State, supra.* There the court was invoked to define, first, the elements which constituted the crime charged, and, secondly, the principles of the defense invoked. It was a charge designed to inform the jury of the elements of the crime and its defense, and not to inform them upon another proposition, viz: that the defendant was entitled to the benefit of any reasonable doubt of his guilt. My brothers, however, argue and so hold, that each charge requested must be complete and perfect in itself, without reference to any other charge, general or special, given, or supposed to have been given, by the court: that there is no distinction in principle, between the charge under consideration, and that in *Roden's* case, and adhering to the ruling in that case, the charge in question was faulty for the reason mentioned, and properly refused.

Good character of the accused is a fact to be considered in connection with all the other evidence, and when so considered may sometimes properly generate a doubt of guilt when the other evidence without it would leave no doubt. The jury should not be instructed to single out the evidence of good character, and from it alone, without considering its connection with the other evidence, reach the conclusion that a reasonable doubt of guilt exists. Charge 3 requested by defendant, was

[Miller v. The State.]

properly refused.—*Goldsmith v. State*, 105 Ala. 8; *Springfield v. State*, 96 Ala,, 81; *Grant v. State*, 97 Ala., 35.

Charge No. 4, requested by defendant, was abstract and invaded the province of the jury, and was properly refused.

Charge No. 5, requested by defendant, seems to be a correct exposition of the law, but we think it is couched in language which seeks to put the court in the attitude of casting some distrust, doubt or suspicion upon the truth of the State's evidence of threats. Why insert the word "even" in the expression, "even if it be a fact?" We think it justified the court in refusing the instruction.

The judgment of the Circuit Court must be affirmed.

## RESPONSE TO APPLICATION FOR REHEARING.

HEAD, J.—We have given the application for a rehearing very careful consideration, and my brothers adhere to the principles expressed in their behalf, in the former opinion. I adhere to my dissenting views therein expressed, but, upon closer scrutiny of the record, I now assent to the conclusions reached, for other reasons, viz: The objection to the admissibility of the witness, May's, testimony was general, offending the rule of July 1st, 1891, printed in 90 Ala. Reports. The charge, on the subject of reasonable doubt, gave undue prominence to the testimony of the defendant. The trial court could not, in such an instruction as this, be required to make special mention of the defendant's testimony. In submitting the evidence to the jury, it is the duty of the court to submit it all alike, without discrimination, or giving special prominence to any part of it. The only purpose of inserting in the charge, the reference to defendant's testimony, was to call the attention of the jury specially to that testimony. The court was justified in refusing the charge. My brothers concur, also, in these reasons.

Application overruled.