# Washington v. The State.

## Murder.

(Decided May 21, 1908. 46 South. 778.)

1. *Homicide; Evidence.*—A question as to what a certain woman was doing at witness's house, where the homicide occurred, at that time of night, called for improper evidence and there was no error in sustaining the objection thereto.

2. *Witnesses; Examination; Surprise.*—Where a witness testified that she did not know that defendant had ever whipped her, it was not error to allow the prosecuting attorney to ask the witness if she did not tell him on the day before while they were in the jury room that the defendant had beaten her a number of times, he having stated to the court that he was surprised by the testimony.

3. *Same; Leading Questions.*—Where the generality of the answers to the leading questions could have been obviated by proper cross examination, the defendant cannot complain of the fact that the question was leading, or that the answer was general.

4. *Same; Discretion of Court.*—Whether or not the court will permit a leading question to be asked a witness for the purpose of impeaching another witness, is within its discretion.

5. *Homicide; Motive; Evidence.*—It was permissible, as tending to show motive for the homicide, for the state to show that a young woman, who was with deceased when he was killed, had been to a store where the witness worked to see the defendant.

6. *Appeal; Review; Exceptions.*—Objections to evidence will not be reviewed where no exceptions are reserved.

7. *Same; Harmless Error.*—It is not prejudicial error to overrule objections to evidence which in itself is not prejudicial.

8. *Homicide; Evidence; Uncommunicated Intent.*—Defendant cannot, as a witness, state whether or not he would have gone into the

house where the homicide occurred, if he had known deceased was there.

9. *Charge of Court; Intent; Instruction.*—A charge asserting that the defendant should be acquitted unless the evidence shows that he went to the place of the homicide with the willful, deliberate and malicious intent to take the life of deceased, or that before he struck the fatal blow, he formed such intent; that defendant could not be convicted if he did not with malice aforethought intend to kill the deceased at the time he struck the fatal blow, pretermits the consideration of the lower degrees of homicide, and its refusal was proper.

10. *Same; Conformity to Evidence.*—Where the evidence without conflict shows that the wound was properly treated, and that it caused decedent's death, an instruction is properly refused which raises the question as to whether or not the death was the result of malpractice.

APPEAL from Montgomery City Court

Heard before Hon. W. H. THOMAS.

John Washington, having been convicted of murder in the second degree and sentenced to imprisonment for 10 years, appeals. Affirmed.

The exceptions to evidence are sufficiently stated in the opinion of the court. The following charges were refused to defendant:

(1 and 2) The general affirmative charge.

(6) "The court charges the jury that unless you believe from the evidence in this case that the defendant went to the house with the willful, deliberate, and malicious intent to take the life of the deceased, McDaniel, or that before he struck the fatal blow he formed such willful, deliberate, and malicious intent to take the life of deceased, then you could not convict the defendant, if he did not with malice aforethought intend to kill the deceased at the time he struck the fatal blow."

(10) The court charges the jury that if you believe from the evidence in this case that the death of the deceased was not the natural and proximate result of injuries inflicted by the defendant, but was from malpractice or want of proper medical treatment, then the jury will find the defendant not guilty."

[Washington v. The State.]

(11) "The court charges the jury that if you believe from the evidence in this case that the defendant did not strike the deceased a fatal blow, and that the death of the deceased did not result as the proximate and natural cause of the blow stricken by the defendant, but for some other reason, then the jury will find the defendant not guilty."

(19) "'The court charges the jury that, if defendant had reasonable grounds for believing and did believe that it was necessary for him to kill the deceased in order to preserve his own life or to save himself from grievous bodily harm, they should find the defendant not guilty."

No counsel marked for appellant.

ALEXANDER M. GARBER, Attorney-General, for the State.—In view of the statement of the solicitor of his surprise at the testimony of the witness Thorington, it was permissible to question the witness as was done.— *Southern B. T. Co. v. Mayo,* 134 Ala. 641. An affirmative answer to the question of the solicitor to the witness Thorington, would have been a short hand rendering of the facts, and it was permissible.—*Reeves v. The State,* 96 Ala. 33; *Lewis v. The State,* 49 Ala. 1; *Miller v. The The State,* 107 Ala. 40. It is discretionary with the court to permit or not leading question.—*Anderson v. The State,* 104 Ala. 83. Questions calling for the uncommunicated purpose or motive of the witness are bad. —*Hill v. The State,* 137 Ala. 66; *Williams v. The State,* 123 Ala. 39; *Harrison v. The State,* 78 Ala. 5. A homocide may be committed in the heat of passion aroused by a blow and yet be done with malice.—*Martin v. The State,* 119 Ala. 1. The defendant cannot escape punishment because by some kind of treatment, the patient might be cured.—*Daughrell v. The State,* 113 Ala. 7.

HARALSON, J.—The first witness for the state was Albert or Son McDaniel, a nephew of the deceased, John McDaniel, who testified, that the killing occurred at the home of witness; that Willie and Jane Thorington, Nellie Timothy and Bob Motley, were all there; that John McDaniel, the deceased, was sitting in a rocking chair, with his hat pulled down over his face, in front of the fire place; that the defendant walked in the house and commenced stabbing deceased; that he stabbed him in the head, and then pushed him down, and cut him in the face and on his arm, and at the time he was cutting him, he had deceased down and was on top of him.

Defendant's counsel, on the cross, asked the witness, "What was Willie Thorington doing there at 11 o'clock at night?" to which question the solicitor objected, and the objection was sustained, and in this, there was no error, as it was immaterial what Willie was doing at the scene of the trouble at 11 o'clock that night.

Defendant's counsel asked him further: "You and Bob Motley lived there, and permitted this man, John McDaniel, to come into your house and be cut up as you have described? Your uncle, John McDaniel, was there on the floor in your house? Bob Motley was asleep and you, so scared, and the other man ran out of the house?"

The solicitor objected to the question because it was three questions in one. The court acted within its discretion in sustaining the objection. It was involved and misleading, and difficult to be answered intelligently.

The witness, Willie Thorington, testifying for the state, stated, that she did not know that defendant had ever whipped her, or had ever hit her or done anything to her, at Bob Motley's house or elsewhere. The solicitor, after stating that he was surprised by this testimony, and to refresh the memory of the witness, asked her if

she did not tell him, the solicitor, in the jury room, yesterday, that John Washington had beat her a number of times about other men. The defendant objected to the question, because incompetent, immaterial, and irrelevant; shed no light on the issue, and was an improper manner for the solicitor to examine his own witness.

Taking the question in connection with the answer of the witness, we find no error prejudicial to the defendant· For the same reasons, exception 5, as indicated on the record, cannot avail defendant anything.

The question of the solicitor to the witness, whether, "Is it not a fact that John Washington came into that house and started the trouble by hitting John McDaniel on the back of the head?" was permissible. An affirmative answer would have been a mere shorthand rendering of the facts. The defendant, by cross-examination, could have elicited all the facts in detail, within the knowledge of the witness, and he cannot complain of the generality of the statement of the witness, which, by such examination, could have been obviated. *Miller v. State,* 107 Ala. 57, 19 South. 37; *Lewis v. State,* 41 Ala. 414. The witness answered, that defendant came and began stabbing John McDaniel in the head while he was sitting down in the chair. Without reference to the question, whether objectionable or not, this answer was clearly competent, and was not objected to by defendant.

Counsel for defendant asked the witness, Jane Thorington, "If Albert McDaniel was standing up there, with his head on the mantelpiece?" The solicitor objected because the question was leading. Albert had stated in his examination, that he was standing with his head on the mantelpiece, when the defendant came in, or when the fight started, and counsel for defendant desired an answer to the question, to impeach the witness, Albert McDaniel. The question was confessedly leading, and

it was discretionary with the court, to allow it answered or not, and its ruling is not reviewable on appeal. *Anderson v. State,* 104 Ala. 83, 16 South. 108.

The same thing may be said as to question propounded to the witness on page 14 of the record, as to what Son McDaniel and Bob Motley did. The court stated, he would allow the defendant to ask what these persons did. As to Bob Motley, the defendant asked the witness what he did, and it was answered.

On cross-examination of defendant's witness, Amos Webb, he testified that he did not know that Willie Thorington was defendant's girl, though she came down to the store (where witness worked) to see him sometimes.

The defendant moved to exclude the answer.

It was admissible as tending to show motive on defendant's part for killing deceased. *Marler v. State,* 68 Ala. 584.

The defendant's counsel asked the state's witness, Nellie Timothy, "If Bob Motley was her sweetheart?" The solicitor objected on grounds stated; but there was no exception reserved. What purports to be a reservation of exception is, "The court overruled defendant's objection, and defendant duly and legally excepted."

John Dixon, for the defendant, on cross-examination by the state, testified, that he did not know what deceased was going to kill defendant about, and did not know that Willie Thorington was defendant's girl, and defendant never told him so. "Defendant moved to exclude the answer of the witness, that Willie Thorington was not defendant's girl, or that defendant had never told him so." The court overruled the objection. Deceased had told defendant, as the witness testified, that he was going to kill him, the defendant. We discover nothing in this prejudicial to defendant. If of any importance, it was rather favorable to defendant than otherwise. It

[Washington v. The State.]

was not competent for counsel for defendant to ask him on his examination, "If you had known John McDaniel was in the house, would you have gone there?" The question called for a secret uncommunicated purpose and intention of the witness.—*Williams v. State,* 123 Ala. 39, 26 South. 521.

Charge 6, requested by defendant, was not improperly refused. Homicide may be committed in the heat of passion suddenly aroused by a blow, and yet be done maliciously. Suddenly aroused passion and malice may coexist, and both cause the act. *Martin v. State,* 119 Ala. 1, 25 South. 255. This principle is not hypothesized in the charge. The defendant might have been convicted of manslaughter, of which malice aforethought is not an ingredient.

The evidence in this case is without conflict, to the effect, that the wounds inflicted on the deceased were properly treated, and that one of the wounds caused the death of the deceased. Hence, the charges seeking to raise the question that the death was the result of malpractice were properly refused.

The other charges refused to defendant are patently bad, and the court committed no error in refusing them.

Affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.