[Earle v. The State.]

# Earle *v.* The State.

## *Larceny.*

(Decided June 8, 1911: 56 South. 32.)

1. *Witnesses; Impeachment; Competency of Testimony.*—Where the prosecuting witness testified to the loss of his personal property and that he had not played craps with. the defendant, he could not be asked on cross examination for the purpose of impeachment whether or not it was against the rule of his employer for employees to gamble, where it was not intimated that the defendant intended later to offer evidence showing that the witness had lost his property by gambling, and there was nothing in the evidence to show that the defendant had gambled on that occasion, although the defendant stated that he expected to show by the witness that it was against the rules and that a discharge followed a violation of such rules, since the probative force of the matter proposed to be inquired about did not have the effect sought to be given it by the defendant.

2. *Same; Evidence to Sustain.*—Where the credibility of the witness was in no wise impeached, the person introducing him as a witness cannot offer evidence of his credibility.

3. *Larceny; Evidence.*—In a prosecution for larceny where the prosecuting witness had testified that his property was stolen while he was asleep at a table after drinking with the defendant, the fact that the witness had a home to which he could have gone to sleep, was irrelevant as was the fact that the witness was willing for the case to be settled by a fine rather than imprisonment.

4. *Evidence; Competency; Aid to Prosecution.*—Where there was no evidence that an employer of one of the state's witnesses was assisting in the prosecution, a question to such witness as to another employee and his connection with the prosecution was properly excluded.    •

5. *Trial; Absent Witness; Comment by Counsel.*—Where a witness is equally accessible to either party and can be introduced and' examined by either of them, no unfavorable comment because of a failure of such witness to testify can be indulged by either ; but if one party alone had the right to offer evidence on a given point counsel for the opposing party has the right to comment upon its absence.

6. *Charge of Court; Answer to Argument.*—It is proper to refuse charges asked for no other purpose than to respond to or offset argument of counsel.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

O. B. Earle was convicted of grand larceny and he appeals. Affirmed.

TATE & WALKER, for appellant. The court erred in denying defendant the right to ask the prosecuting witness if it was not against the rules of his employer to gamble.—*Pace v. L. & N.,* 52 South. 57. The defendant should have been permitted to inquire of the prosecuting witness as to the detective Reardon who was assisting in the prosecution, and who was employed by the same company as the witness.—*Prince v. The State,* 100 Ala. 144; *Lodge v. The State,* 122 Ala. 98; *Steahmer v. The State,* 125 Ala. 76; 126 Ala. 380; 125 Ala. 600; 138 Ala. 94; 74 Fed. 235; 85 Fed. 534; 30 A. & E. Enc. of Law, 1091. Counsel discuss other assignments of error relative to evidence, but without citation of authority. The court erred in permitting the solicitor's remarks that were objected to.—*Jordan v. Austin,* 161 Ala. 589; *Etheridge v. The State,* 124 Ala. 106; *Mann v. The State,* 134 Ala. 20; *Bates v. Morris,* 101 Ala. 282; *Bennett v. Georgia,* 12 L. R. A. 449.

ROBERT C. BRICKELL, Attorney General, for the State.

DE GRAFFENRIED, J.—The defendant was indicted for grand larceny, was tried and convicted, and was sentenced to the penitentiary.

During the progress of his trial in the court below, the defendant reserved exceptions to some of the rulings of the court relating to the admission of certain evidence, and it is to a consideration of those rulings that this opinion is addressed.

1. The evidence on behalf of the state tended to show that one Long, who lived at Anniston, and who was an employee of the Southern Railway Company, and whose duties required him to be awake at night, went, about 8:30 o'clock one morning, with the defendant into the back room of a bar; that they sat together at a table

and drank together; that Long, having sat up the previous night, fell asleep, and when he awoke he ascertained that the defendant had disappeared, and that witness' watch, of the value of $30, and $65 in money, which he had on his person when he went to sleep, had also disappeared; that upon inquiry the witness ascertained that defendant had left Anniston for Talladega; that witness went immediately to Talladega, reaching there that night; that he secured a policeman, and that they found defendant asleep in bed in a room in a bawdy house. The evidence further tended to show that the defendant had in his possession the witness' watch and a part of his money, and that later a sufficient sum was paid witness to cover the said $65.

On cross-examination, the defendant asked the witness Long if he and the defendant did not play craps in the back room of the bar, and if the defendant did not win his money playing craps. The witness replied that he did not. The defendant then asked the witness, "It is against the rules of the railroad company for its employees to gamble, isnt' it?" The defendant's counsel then stated to the court that they expected to show by the witness that it is against the rules and regulations of the railroad company for its employees to drink, or to frequent saloons, or to gamble, or to play cards or dice, and that a penalty for a violation of this rule is a discharge of the employee. The court thereupon sustained the objection of the solicitor to the question and the defendant excepted. The witness Long had already testified that the money was stolen from him while in the back room of a barroom, and that he had been drinking there. If the rule inquired about existed, he had already subjected himself, under his testimony, to its penalties, and how his answer to the above question could have affected his credibility we are unable to see. Coun-

sel for defendant contend that if they had been allowed to prove the existence of the rule, the jury might have inferred that the defendant testified that his money was stolen from him, and not lost in a game of craps, because of a fear on his part that he might lose his position if he admitted that he played craps or dice in violation of said rule. There was nothing in the evidence, up to the time the above question was asked, tending, in the remotest degree, to show that defendant had gambled on the occasion inquired about, nor does the above statement of counsel, in which they inform the court what they expect to prove, and which we have set out verbatim, tend to show that the defendant intended at a later stage of the trial, to offer evidence that the witness lost his watch and money in a game of dice, and that it was not stolen. Having failed to bring his case within the reason of the rule declared in *Pace v. L. & N. R. R. Co.,* 166 Ala. 519, 52 South. 57, the court properly sustained the objection of the solicitor to the above question.

2. The Southern Railway Company had no pecuniary interest in, nor was it a party to, this prosecution. The defendant was not charged with the larceny of any of its property, or of any property over which it had control, or which was on its premises when stolen. If it be a fact, as contended by counsel for defendant, that Reardon was an employee of the Southern Railway Company, and in that capacity aided its attorneys in the trial of its causes, that fact, without more, would not, under the evidence in this case, have had the slightest legal tendency to show that, because Reardon had manifested interest in this case, the Southern Railway Company was in any way aiding in the prosecution of the defendant. The record contains no evidence tending to show that Reardon, if he took any interest in this case, was not

[Earle v. The State.]

acting on his own initiative, and the defendant offered
no evidence tending to show that he was acting on be-
half of the railroad company. As there is not the slight-
est reason shown why the railway company should have
interested itself in this prosecution, and no evidence
whatever that Reardon acted for it, or was authorized
to act for it, the court committed no error in sustaining
the state's objections to the questions put to the witness
Long with reference to Reardon and his alleged connec-
tion with the case.

The case of *Price v. State,* 100 Ala. 144, 14 South.
409, 46 Am. St. Rep. 28, declares a sound rule of law,
but its doctrine can only be invoked in cases where the
facts justify the application of the doctrine which it an-
nounces.

3. The questions propounded to the witness Long,
with reference to statements made by said witness to
the brother of the defendant, called for evidence which
could not, in any event, have been of benefit to the de-
fendant. The fact that the witness was willing for the
case to be settled by a fine, rather than by imprison-
ment in the penitentiary, indicated feelings of kindness,
rather than those of hostility, on the part of the witness
to the defendant. Neither was the fact that the witness
had a wife and children in Anniston relevant. The evi-
dence for the state and for the defense shows that the
witness did go to the bar, that he drank there, and lost
his money, and the fact that he had a home to which he
could have gone to sleep does not tend to show that he
did not in fact go to sleep in the back room of the bar.

4. It is the unquestioned law of this state that no
unfavorable inference can be drawn and no unfavorable
argument to a jury made by counsel against a party to a
cause because of the absence of the testimony of a wit-
ness in a cause, when that witness is accessible to both

parties and can be introduced by and examined by either party as a witness.—*Du Bose v. Conner, Infra.,* 55 South. 432. It is also the unquestioned law that a party who offers a witness cannot introduce evidence of his credibility until his credibility has been attacked by the other party by one of the methods of impeachment. In this case the state offered Long as a witness. The defendant did not, in any way, offer evidence tending to impeach him. The state could not, therefore, introduce evidence on the subject.—*Watson v. State,* 155 Ala. 9, 46 South. 232; *Washington v. State,* 155 Ala. 2, 46 South. 778. The defendant alone had the right, if such evidence existed, to show by witnesses that Long's reputation for truth was bad. When one party to a suit alone has the right to offer evidence on a given point, the jury has a right to infer that no such evidence exists, and counsel for the opposite party to such suit have a right to comment on the absence of such evidence as a material matter for the consideration of the jury. It is for this reason that the statute which confers upon a defendant in a criminal case the right, at his option, to testify as a witness provides that, if he fails to so testify, no unfavorable inference shall be drawn from such circumstance. The statement of the solicitor to which exception was taken was simply an argument that as the defendant had not *impeached* the witness Long, the jury had the right to infer that his reputation for truth was such that it could not be impeached.

The doctrine announced in *Du Bose v. Conner, supra,* and *Etheridge v. State,* 124 Ala. 106, 27 South. 320, applies only in cases where the right to introduce the evidence exists in *both* parties to the suit.

In the case of *Bennett v. State of Georgia,* 86 Ga. 461, 12 S. E. 806, 12 L. R. A. 449, 22 Am. St. Rep. 468, the solicitor urged that the defendant was a man of bad

[Mangrall v. The State.]

character, *because the defendant* had not offered evidence of his good character, and the court held the argument improper.   In that case the *state* had the right to *prove the bad* character of the defendant.   Having offered no evidence on that subject, the presumption remained with the defendant that he was a man of good character, and the decision of the court was eminently correct and in perfect accord with the views above expressed.

5.   The defendant asked the court, in writing, to give two charges to the jury.   Both charges state that they are asked as replies to certain portions of the solicitor's closing argument.   It is not error for a court to refuse a charge having no purpose other than to respond to or offset arguments made before the jury by the prosecuting officer.—*Barnes v. State*, 134 Ala. 36, 32 South. 670; *White v. State*, 133 Ala. 122, 32 South. 139; *Michell v. State*, 129 Ala. 23, 30 South. 348; *Ridgell v. State, Infra.*, 55 South. 327.

There was no error in the record, and the judgment of the court is affirmed.

Affirmed.