# Fuller *v.* The State.

## *Indictment for Murder.*

1. *Homicide; admissibility of evidence.*—Where, on a trial under an indictment for murder, a witness testifies that he separated the defendant and the deceased, who were in an altercation, and that when the deceased arose he pulled something from his pocket and threw it at the defendant, and that after the difficulty, he, the witness, went to the place where the difficulty occurred, and looking in the direction in which the missile had been thrown by the defendant, he found a knife, which he identified as belonging to the deceased, the knife so found is sufficiently identified to allow it to be introduced in evidence; the weight of the evidence being a question for the jury.

2. *Same; map of locality of homicide; witnesses can refer to such map in their testimony.*—On a trial under an indictment for murder, where a witness prepares a plat or diagram of the place of the homicide, and testifies to its correctness, and such plat or diagram is introduced in evidence, it is permissible for other witnesses to refer to such diagram or plat in explanation or elucidation of their testimony.

3. *Same; admissibility of evidence.*—On a trial under an indictment for murder, an objection to a statement by a witness that he heard the defendant "cursing" at the time of the altercation between him and the deceased, which resulted in the homicide, is properly overruled; since the defendant, on cross-examination, had an opportunity to elicit of the witness the precise language used.

4. *Same; admissibility of dying declarations.*—Where, on a trial under an indictment for murder, it is shown that shortly after receiving the wound, the deceased asked for water, and upon being raised up and given the water he fainted, and coming back to consciousness he asked to be put down, stating that he was "dying," and it was further shown that he did die from the effects of the wounds received in a few hours, statements made by the deceased within a few minutes after stating that he was dying, having reference to the difficulty, are admissible in evidence as dying declarations; and an objection to such evidence, upon the ground that it was illegal, is too indefinite and is properly overruled.

5. *Same; evidence of character of defendant.*—On a trial under an indictment for murder, where the defendant introduced evidence of his good character, it is competent for the State, in rebuttal, to introduce evidence to show that the defendant's general character for peace and quiet was bad.

6. *Same; confessions; when shown to be admissible.*— On a trial under an indictment for murder, where a witness for the State testifies

[Fuller v. The State.]

that just after the killing he assisted in the arrest of the defendant, and, without any threats being made or inducements offered, or anything said to the defendant to induce him to make the confession, he admitted that he cut the deceased with his knife, such admission or confession is shown to have been voluntarily made on the part of the defendant, and is admissible as evidence against him.

7. *Rulings upon the evidence; when error without injury judgment will not be reversed.*—Where on the trial of a criminal case, inadmissible evidence is erroneously admitted, but the same facts are disclosed by competent evidence of other witnesses, no injury resulted to the defendant from the erroneous ruling, and, under the provisions of the statute, (Code of 1896, § 4333), the judgment of conviction will not be reversed on account of such error.

APPEAL from the Circuit Court of Cleburne.

Tried before the Hon. D. C. BLACKWELL, Special Judge.

The appellant, L. J. Fuller, was indicted and tried for murder, was convicted of murder in the second degree, and sentenced to the penitentiary for 30 years.

The evidence for the State tended to show that the defendant was superintending some work in a field, where a mule was being driven to a stump pulling machine; that the deceased, Thomas Henry, had been employed to drive the mule; that L. J. Fuller discharged said Henry, who thereupon went to one Scott, from whom the mule was rented, and about an hour after being discharged by the defendant Fuller, said Henry returned and gave to Fuller an order from Scott, which instructed him to "let the bearer, Tom Henry, drive my mule until you hear from me further. If this does not suit you, send the mule home." This order was signed by Scott, the owner of the mule. The defendant declined to let Henry drive the mule, and upon Henry starting to unhitch him, a difficulty between the defendant and Henry ensued, in which the defendant cut Henry with a knife, from the effects of which wound he died in a few hours. The difficulty was between 7 and 8 o'clock in the morning, and Henry died about 12 o'clock.

One Sam Teal was introduced as a witness for the State, and testified, among other things, that when he saw the defendant and the deceased engaged in the difficulty, he ran to them, and found the defendant lying upon the deceased, who was on the ground; that he was

[Fuller v. The State.]

instrumental in getting the defendant off of the deceased, and that the defendant rose with a knife in his hand, dripping with blood, and there was blood on the defendant's hand ; that Tom Henry rose from the ground, and reaching down by his side or in his pocket, pulled therefrom something and threw at the defendant. This witness further testified that after the difficulty he went to the place where the killing occured, and about ten feet from where the deceased and the defendant were fighting, and in the direction in which the missile had been thrown, he found a knife which he identified as the knife which had belonged to Tom Henry. This knife was offered in evidence. The defendant objected to this knife being introduced in evidence, upon the ground that it had not been properly identified. This objection was overruled, and the defendant duly excepted.

Another witness for the State testified that just after the killing, he assisted in the arrest of the defendant ; that there were no threats made or inducements offered, or anything said to the defendant to induce him to make a statement or declaration, but that while with the defendant he told him that he cut Tom Henry with his knife, and that he was sorry for it. The defendant objected to this testimony, and moved the court to exclude it, upon the ground that the statement by the defendant was not shown to have been voluntary. This objection was overruled, and the defendant duly excepted. The only rulings of the trial court presented for review on the present appeal are the rulings upon the evidence, and the facts pertaining to the other rulings, as here presented, are sufficiently stated in the opinion.

MERRILL & BRIDGES, for appellant.—A witness who is not an expert should state facts and not his opinion.—1 Greenleaf on Evidence, §440 ; *Bennett v. State,* 52 Ala. 370 ; *McKee v. State,* 82 Ala. 32.

To render the statements of deceased admissible as dying declarations, it must be shown that they were made under a sense of impending dissolution. Such expressions as "he has cut me to death" or, "he has beat me to death," or "my head is killing me," are not sufficient to warrant the admission of his statements as dying declarations.—*Justice v. State,* 99 Ala. 180.

Whenever. evidence of character is admissible, it is

only evidence of general reputation which is to be admitted.—1 Greenleaf on Evidence, § 44; *Ingram v. State,* 67 Ala. 67; *McQueen v. State,* 108 Ala. 54; *McCutchen v. Loggins,* 109 Ala. 457.

. Confessions of guilt in criminal cases should be received with great caution; and to be admissible must be voluntary.—1 Greenleaf on Evidence, §§ 214, 219; *Gregg v. State,* 106 Ala. 44; *Beckham v. State,* 100 Ala. 15.

WILLIAM C. FITTS, Attorney-General, for the State.

COLEMAN, J.—The defendant was convicted of murder in the second degree. Several exceptions were reserved to the ruling of the court upon the admission of evidence and which are presented for our consideration by appeal. In some instances the same principle of law applies to more than one exception. In such cases a decision will be made only upon one of the exceptions.

; The objection that the knife offered in evidence was not sufficiently identified, was properly overruled. There was evidence tending to show the ownership of the knife and its possession. The weight of the evidence was for the jury. The witness for the prosecution, Sam Teal, prepared a diagram or plat of the place where the homicide occurred. He testified it was practically correct, and the diagram was admitted in evidence without objection. Subsequently another witness was examined, with reference to the position of the parties as shown by the diagram. This witness also stated that he knew the location, and that the diagram was practically correct. Defendant objected to his examination relative to the diagram on the grounds that the diagram was neither prepared by the witness nor in his presence, and upon the further ground, that it had not been sufficiently shown that the diagram was correct. Neither ground of objection is tenable, and there was no error in overruling the objection.

The defendant objected to the statement of a witness that he heard the defendant *"cursing."* This objection was properly overruled. On cross-examination, if the defendant had so desired, it was his privilege to have elicited from the witness the precise language used.

The evidence showed that the killing of deceased re-

[Fuller v. The State.]

sulted from having been cut or stabbed with a knife by the defendant. The difficulty occurred, according to some of the witnesses, between seven and eight o'clock in the morning, by others, about eight; and that he died about 12 o'clock, or between 12 and one o'clock the same day. A witness testified that shortly after the cutting the deceased called for water, and he was raised up and given water, and then fainted or died away. Deceased then requested witness "to put him down, that he was dying." The solicitor then asked the witness what he said to deceased, and what deceased replied. The defendant objected to what witness said to deceased, on the ground that it was illegal. The witness also testified that he asked deceased about the cutting in defendant's hat. The defendant objected to this question on the same ground. These objections were overruled, and the witness testified that deceased replied that "Mr. Fuller cut him to death for nothing;" "that he went to loose the mule, and Fuller came up and cut him in the neck;" "that his knife was never open, and that he did not cut Fuller's hat." The objection was not put upon the ground that no sufficient predicate had been laid for the admission of dying declarations, or that defendant was not within hearing, but the objection was that the questions and evidence were illegal. Courts are not required to cast about in search of grounds to sustain an objection, and unless the evidence offered is obviously illegal, the objection will not be sustained. We are of opinion that taking all the facts into consideration, the deceased was in that condition of mind that his statements were admissible as dying declarations. The facts show that he had been mortally wounded by being stabbed in the neck and back, that he was bleeding ("the blood came in gushes") and unable to stand up, and stated that he "was dying," and the facts show he died from the effects of his wounds in a few hours. The statements of deceased were made within three or four minutes after he had requested to be laid down, and after his statement "that he was dying."

The case is distinguishable from that of *Justice v. The State*, in 99 Ala. 180. There were some expressions of deceased in the latter case indicating that he was impressed with the belief that death was impending, but

[Fuller v. The State.]

these expressions were made in connection with others which qualified their force and legal effect, and considered altogether, repelled the conclusion, which authorized their admission as dying declarations. We find nothing of the kind in the statements of deceased in the case under consideration.—*Anderson v. The State*, 79 Ala. 5; *Sullivan v. The State*, 102 Ala. 135.

The defendant introduced evidence of his good character. The prosecution being for murder, it was competent in rebuttal to introduce evidence that for peace and quiet, his general character was bad. There was no error in overruling the objection to this evidence.

According to the rule which prevails in this State, the declarations and statements of defendant were voluntarily made and admissible as evidence against him.

A witness who was present and saw the difficulty, testified, "I saw the wound. It was cut with a knife. It seemed as if the knife went in and went backward. That was the appearance of the wound." The objection to this testimony is, that it is a mere expression of opinion, and not the statement of a fact, and, not being the testimony of an expert, it is objectionable. The witness was merely describing to the jury the wound as it appeared to him. He had just stated that "blood was coming from his neck;" the wound "was cut with a knife;" "the appearance of the wound was that it went in and went backwards." The witness was testifying to facts as he saw them. He may not have used very apt words to convey his meaning, but whatever of obscurity, if any, there was, might have been cleared up by a cross-examination. This was the view of the trial judge, as is manifest from his ruling and statement at the time. If the question was doubtful, we would not feel justified in reversing the case on this point under our present statute. Other witnesses' testimony as to the number and character of the wounds inflicted on the deceased removed all difficulty on this point. Formerly in this State, the same rule as to error without injury applied alike in both criminal and civil cases; but later decisions held that in criminal prosecutions when error was shown, a reversal followed, unless it affirmatively appeared, that no injury resulted from the error. Section 4333 of the Code of 1896, recently adopted, reads as follows: "In cases taken to the supreme court under the pro-

[Walker v. The State.]

visions of this chapter, no assignment of errors, or joinder in errors is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant." If this change in the law is to be given any force, we would not reverse the cause upon the legal exception last considered, because from the other testimony, we are satisfied no injury resulted therefrom to the defendant.

Affirmed.