# Stevens *v.* The State.

*Indictment for Murder.*

1. *Trial and its incidents; right of continuance.*—Where in the trial of a criminal case the defendant asks for a continuance on the ground of the absence of five material witnesses, four

[Stevens v. The State.]

of whom had not been summoned although subpoenaes had been issued for them, and one of whom, though summoned, did not appear, and it is shown by the court that the defendant had six witnesses present, it can not be stated that the court in refusing a motion for a continuance abused its discretion.

2. *Homicide; continuance; res gestae.*—On a trial under an indictment for murder, a statement made to his brother by the deceased immediately after he was shot that "I am killed," is admissible in evidence as a part of the *res gestae* and as tending to give character to the act of the defendant.

3. *Homicide; admissibility of evidence as to position of deceased.* On a trial under an indictment for murder, where the physician who attended the deceased after he was shot testified that the bullet entered the right arm below the elbow and passed directly through it, it is competent for a witness to testify in answer to a question that by reason of the range of the bullet it was impossible for the deceased to have had his pistol presented or his arm extended toward the defendant at the time he was shot, and that the deceased's arm could only have been hanging by his side or extended straight up, to have received such a wound; and further that from the other wound received he could not have been facing the defendant at the time of the shooting; such testimony being but the statement of physical facts and relevant to the question raised by the plea of self defense.

4. *Evidence; admissibility of dying declarations.*—Where, after being shot a person is told by his attending physician and by his father that he is going to die, the statements thereupon made by him as to the circumstances of the difficulty which resulted in his death, are admissible in evidence as dying declarations.

5. *Admissibility of evidence.*—On a trial under an indictment for murder, where the defendant's witnesses testified that he saw the deceased during the afternoon of the killing and that he was drunk, though not so drunk that he could not walk, the court does not err in sustaining an objection to the question asked said witness as to what the deceased was doing to indicate that he was drunk or drinking; the evidence called for by such question being irrelevant and impertinent.

6. *Same.*—On a trial under an indictment for murder, where the officer who arrested the defendant testifies to confessions made by the defendant, a question propounded to such witness on his cross-examination asking him if he was not, as an officer, looking for the deceased at the time of the shooting, called for irrelevant and impertinent evidence and is properly overruled.

[Stevens v. The State.]

7. *Evidence; voluntary confession.*—Where the officer who arrested the person charged with the commission of an offense testifies that at the time he made the arrest he was armed but did not make any threats or offer any inducement or hope of reward to the defendant, and that upon defendant asking him if he was going to be killed or hung he told him that he was not, and was only going to be put in jail, a confession made by the defendant to such officer, is shown to have been voluntary and is admissible; and the fact that the officer was armed and the defendant was frightened or apprehended that he would be killed or hanged does not render the confession involuntary.

8. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where a witness for the defendant testifies that on the afternoon of the killing at a certain hour he saw the deceased at a saloon, and that he was drinking, it is competent for the State in rebuttal to show by the father of the deceased that on the afternoon of the killing he was engaged in the performance of work at a place different from the saloon designated by the State's witness.

9. *Charge of court to jury; when not error to refuse charges which are repetitions of others given.*—It is not error for the court to refuse to give a charge at the request of the defendant which is a substantial repetition of a charge previously given to the jury.

10. *Homicide; charge as to one's retreating from his own dwelling.* On a trial under an indictment for murder, where there is no evidence tending to show that the defendant was at the time of the killing in his own dwelling or place of business where he was employed, charges requested by the defendant which instruct the jury that a person attacked in his own dwelling house or place of business is not required to retreat, are erroneous and properly refused.

11. *Same; same.*—On a trial under an indictment for murder a charge is properly refused as being a mere argument which instructs the jury that "although the defendant may not have established or made good his plea of self-defense, still you would not for that reason alone be required to convict him of murder in the first or second degree, but you might find him guilty of manslaughter in the first degree."

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. A. H. ALSTON.

The appellant in this case, George Stevens, was indicted and tried for the murder of Jodie Weston by shooting him with a pistol, was convicted of murder in

the second degree and sentenced to the penitentiary for forty years.

When the case was called for trial, the defendant moved the court to grant him a continuance, upon the ground that five of his material witnesses were absent, four of whom had not been found or summoned notwithstanding subpoenas had issued for them and the other of the absent witnesses had been summoned but were absent without defendant's procurement or consent. It was shown to the court that the defendant had six witnesses present. The court refused to grant the continuance asked for and put the State on the written admission of what the defendant expected to prove by the absent witnesses and forced the defendant into the trial of the case. To this ruling of the court the defendant duly excepted.

On the trial of the case it was shown that Jodie Weston was killed in the basement of Blount's saloon in Sheffield, Ala., and that at the time he was killed there were two crap games going on in said basement at two different tables; that at one table white men were playing and at the other table several negroes were playing, including the defendant.

The evidence for the State tended to show that while the defendant was standing at the table where the white people were playing, there was a great deal of fuss being made by the negroes at their table; that upon complaint being made of the fuss, the defendant went over to where the negroes were playing and tried to quiet them; that he had a pistol in his hand at the time; that after trying to quiet the negroes he went away and the defendant, as he turned away, cursed him, using a very opprobrious epithet; that as the deceased turned towards the defendant the latter drew his pistol and as he was rising from his seat fired on the deceased and then shot a second time, from the effects of which wounds the deceased died.

The evidence for the defendant tended to show that when the deceased came to the table where the defendant was playing and tried to quiet them, he had in his hand a pistol; that upon the defendant saying that it was the negroes' night, deceased cursed him and leveled

his pistol upon him as if to shoot, and thereupon the defendant fired upon the deceased, inflicting the fatal wound from which he died.

Charles Weston, a brother of the deceased, testified that he was present at the time Jodie Weston was killed; that immediately after the deceased was shot he went to him where he had fallen, and the deceased said to him, "I am killed." The defendant objected to the witness testifying to this statement made by the deceased, because the character of the wound was not shown. The court overruled the objection and the defendant duly excepted.

During the examination of Dr. Morris, a physician, who testified to having examined the wounds of the deceased, and that he treated them, he was asked "did you tell Weston he was going to die?" The defendant objected to this question, upon the ground that the defendant was not present at the time referred to, the court overruled the objection, and to this ruling the defendant duly excepted. The witness testified that he told Weston that he was going to die, and the court overruled the defendant's motion to exclude this testimony. The witness then testified to the statement made by the deceased after having been told that he was going to die.

The State introduced the father of Jodie Weston, the deceased, who testified that after he was shot he went to the bedside of his son and told him that he was going to die; that this statement was made just after the statement made to the deceased by Dr. Morris, and that thereupon the deceased made a statement as to the circumstances of the difficulty. To the introduction of this statement in evidence as dying declarations the defendant separately objected. The court overruled each of such objections and the defendant separately excepted. The defendant as a witness in his own behalf testified as follows: "I had been flunkeying at the saloon and was down in the cellar on the night of the killing, with a crowd of other negroes." He further testified that at the time he fired the fatal shot the deceased had his pistol drawn and leveled at him and had snapped it at him.

In rebuttal the State introduced as a witness one Floyd Gothard, who testified that he was the officer who arrested the defendant. He then testified that he, to-

gether with other officers, went to the place where the
defendant was; that the other officers remained outside
of the house and he went alone to the defendant's room
to arrest him; that he made no threats nor offered any
inducement or hope of reward, nor did he tell him that it
would be best to make a confession; that it was in the
night time and was dark; that when he arrested him the
defendant was very much frightened and asked him
whether they would hurt him, and whether they would
kill or hang him; that he told the defendant they were
not going to do anything to him but take him to jail.
Thereupon the witness was asked whether or not the de-
fendant said anything to him about the difficulty, and
what it was. The court overruled the objection because
it had not been shown that the proposed confession was
voluntary, and that the question called for illegal and
incompetent evidence. The court overruled the object-
ion and the defendant duly excepted. In answer to the
question the witness then testified that the defendant
told him that Weston, the deceased, did not pull his pis-
tol and that he shot the deceased. The defendant moved
to exclude this testimony because it was not shown that
the confession made by the defendant was voluntary.
The court overruled the motion and the defendant duly
excepted. On the cross examination of this witness he
was asked the following question: "At the time of the
shooting want you as an officer looking for Weston on
the streets?" The State objected to this question, the
court sustained the objection, and the defendant duly
excepted. The defendant reserved separate exceptions
to several portions of the court's oral charge to the jury,
but under the opinion it is not deemed necessary to set
out the separate portions of the charge at length.

The defendant requested the court to give the follow-
ing written charges, and separately excepted to the
court's refusal to give each of them as asked: (1.)
"Gentlemen of the jury, I charge you that you should
not disregard the statement of the defendant simply be-
cause he is the defendant." (2.) "I charge you gentle-
men of the jury, that under the evidence in this case the
defendant was not required to retreat when he was as-
saulted if you believe from the evidence that he was as-

saulted by Jodie Weston." (3.) "I charge you that a person in his own house is not required to retreat and this principle applies to those who are employed about the premises as well as the owner of the premises." (4.) "A man's house or place of business is his castle, his place of refuge. The fact that one is within his castle serves as a warning to deter an assailant from intruding therein." (5.) "The law regards with great jealousy and vigilance the peace and security of the dwelling. A trespass upon it is more than a trespass upon property. It is the same as a trespass upon a person." (6.) "Although the defendant may not have established or made good his plea of self defense still you would not for that reason alone be required to convict him of murder in the first or second degree, but you might find him guilty of manslaughter in the first degree." (7.) "If the jury believe the evidence beyond a reasonable doubt they must find the defendant not guilty."

The defendant separately excepted to the court's giving at the request of the State the following written charges: (1.) "Deliberate and premeditated as those words are used in the statute means only this, that the slayer must intend before the blow is delivered, though it be for only an instance of time before that he will strike at the time he does strike and death will be the result of the blow or in other words, if the slayer had any time to think before the act, however short such time may have been, even a single moment and did think, and he struck the blow, as the result of the intention to kill, produced by this even momentary operation of the mind and death ensued, would be a deliberate and premeditated killing within the meaning of the statute defining murder in the first degree." (2.) "The essential elements of self defense are these: 1st. The defendant must be free from fault, that is he must not say or do anything for the purpose of provoking a difficulty nor most he be disregardful of the consequence in this respect of any wrongful word or act. 2d. There must be a present impending peril to life, or of great bodily harm, either real or apparent as to create the *bona fide* belief of an existing necessity. 3d. There must be no convenient or reasonable mode of escape by retreat or declining the combat." (3.) "The court charges the jury that if

they believe and find from the evidence beyond all reasonable doubt that the defendant in Colbert county before the finding of the indictment in this case purposely killed Jodie Weston after reflection, with a wickedness or depravity of heart towards the deceased and the killing was determined on beforehand, even a moment before the fatal shooting was done then the defendant is guilty of murder in the first degree." (4.) "The court charges the jury that if they find from the evidence in this case beyond all reasonable doubt that the defendant in Colbert county, Alabama, and before the finding of this indictment, purposely killed Jodie Weston by shooting him with a pistol with a wickedness or depravity of heart towards the deceased and the killing was determined on beforehand and after reflection (for however short a time before the fatal shooting was done, is immaterial), then the defendant is guilty of murder in the first degree." (5.) "The court charges the jury that in a case of homicide the law presumes malice from the use of a deadly weapon and casts on the defendant the onus of repelling the presumption of malice, unless the evidence which proves the killing shows also that it was perpetrated without malice; and whenever malice is shown and is unrebutted by circumstances of the killing or by other facts and evidence there can be no conviction for any degree of homicide less than murder."

KIRK, CARMICHAEL & RATHER, for appellant.—The court ought to have granted a continuance of the case. While it is true that the granting or refusal to grant a continuance, as a general rule, is left to the sound discretion of the trial judge, still there may be such a gross abuse of the discretion as to authorize a reversal of the case. This discretion of the court must not be abused or of an unreasonable nature.—*White v. State*, 86 Ala. 69; 1 Bishop on Criminal Procedure, § 102.

The law undoubtedly requires that a confession should be shown *prima facie* to have been voluntary before it is admitted in evidence to the jury. That confessions were voluntarily made must certainly appear before admissible, but if it appears that there was no improper influence from person or circumstances the con-

[Stevens v. The State.]

fessions are *prima facie* voluntary. Can it be said that no improper influences were exerted upon the defendant by the surrounding circumstances?—*Kelley v. State,* 72 Ala. 244; *Redd v. The State,* 69 Ala. 255; *Washington v. State,* 106 Ala. 61; *Stone v. The State,* 105 Ala. 60; *Hornsby v. The State,* 94 Ala. 55.

A witness who saw and examined the fatal wound received by the deceased may describe its appearance so that the jury may determine whether the blow was struck from before or behind, but the witness himself cannot state his own opinion as to the direction from which the blow came.—*McKee v. The State,* 82 Ala. 32.

Witnesses cannot testify as to their opinion, though expert as to matters of common knowledge, which persons of ordinary intelligence, including jurors themselves, are capable of comprehending as much as a witness.—*E. T., V. & G. R. R. Co. v. Watson,* 90 Ala. 44; *Decatur Co. v. Mehaffey,* 128 Ala. 24.

The following charge asked by the defendant ought to have been given: "I charge you that a person in his own house is not required to retreat, and this principle applies to those who are employed about the premises as well as the owner of the premises."—*Jones v. The State,* 76 Ala. 8; *Cary v. The State,* 76 Ala. 78; *Brinkley v. The State,* 89 Ala. 34; *Roberts v. The State,* 68 Ala. 156.

MASSEY WILSON, Attorney-General, for the State. A continuance of a cause is generally addressed to the judicial discretion of the court, and is of a class not revised by a superior court, unless a plain case of the abuse of such discretion has been presented. Without more than here appears there does not seem to have been an abuse of the court's discretion in the matter.—*Huskey v. State,* 129 Ala. 94, 99; *Walker v. State,* 117 Ala. 85; *Kilgore v. State,* 124 Ala. 24.

The statement of the witness, Charlie Weston, was part of the *res gestae* and was properly admitted.—*Barker v. State,* 126 Ala. 69; *Maxwell v. State,* 129 Ala. 48, 55; *Domingus v. State,* 94 Ala. 9, 12.

Expert testimony may be admitted to show the position of the defendant or of the party assailed, based upon the range of a pistol ball wound, is supported by a respectable line of authorities.—*Tullis v. Kidd,* 12 Ala.

648; *Roberts v. Fleming,* 31 Ala. 683; *Barnes v. Ingalls,* 39 Ala. 193; *R. Co. v. Blakely,* 59 Ala. 471, 481; 12 A. & E. Encyc. of Law (2d ed.), 427; note to *Hammond v. Woodman,* 66 Am. Dec, 235; *State v. Asbell,* 57 Kan. 398, 407; *Boyd v. State,* 14 Lea. (Tenn.), 161; *State v. Keene,* 100 N. C. 509; *Miller v. State,* 107 Ala. 40.

The testimony of the witness Gothard as to the confession of the defendant, was properly admitted. *Spicer v. State,* 69 Ala. 159; *McElroy v. State,* 75 Ala. 9; *McQueen v. State,* 94 Ala. 50; *Fuller v. State,* 117 Ala. 36.

TYSON, J.—On the facts shown in the record, it cannot be affirmed that the court abused its discretion in refusing the defendant's motion for a continuance. *Walker v. The State,* 117 Ala. 85; *Kilgore v. The State,* 124 Ala. 24; *Huskey v. The State,* 129 Ala. 94.

The statement of deceased made to his brother, immediately after the difficulty, that he was killed, tended to give character to the act of defendant, and was near enough in point of time to be within the rule making it a part of the *res gestae* of the act of homicide. It was properly admitted.

Dr. Morris, a practicing physician, who examined the wounds of deceased, testified that he found that he had been twice shot by a pistol and was fatally wounded. One bullet entered the right arm below the elbow and passed directly through it and the other entered the left side near the medial line and ranged downwards and was extracted by him from under the skin on the right side. This witness was allowed against the objection of defendant to answer, in response to the question, "whether it was possible from the wound received in the right forearm for Weston [deceased] to have had his arm raised so as to present his pistol in a firing position at defendant when shot?" that "due to the range of the bullet it was impossible for Weston to have had his pistol presented or his arm extended towards defendant at the time he was shot; that Weston's arm could only have been hanging by his side or extended straight up and could not have been directed towards defendant in the position of presenting or aiming the pistol." He

[Stevens v. The State.]

further testified that "judging from the wound in Weston's side he could not have been facing the defendant at the time of the shooting but was shot while standing sideways." This latter statement was also objected to. Irrespective of whether the witness was an expert as to firearms or the range or deflection of bullets fired from cartridges, it seems clear to us that the statements objected to were but statements of physical facts—of a truism well known to the jury, and that no error was committed in their admission of injury to defendant. A similar question was before this court in *Miller v. The State,* 107 Ala. 40, 56. In that case the State was allowed to prove that the muzzle of a pistol would have to be very close to clothing to scorch it. This court said: "That it is of common knowledge that the muzzle of a pistol must be very close to clothing, when fired, to scorch it; and while not necessary to be proven there can be no possible injury to the defendant in permitting a fact to be proven which is already known to the jury, exactly as testified to."

The prosecution had, undoubtedly, the right, to anticipate the defense of self-defense, predicated upon the theory that deceased brought on the difficulty and that he was in the act of shooting the defendant with a pistol when the shots were fired by defendant.

The dying declarations of deceased were properly admitted.—1 Mayfield's Dig., p. 285, §§ 1 *et seq.*

Defendant's witness Williams stated that he saw the deceased on the evening of the killing about half past four o'clock at Zachie's saloon, and that he was drinking though not so drunk that he couldn't walk. Defendant's counsel then asked this witness, "What did Weston do to indicate that he was drunk or drinking?" and "What did he, Weston, do?" We are unable to see the pertinency of these questions. The same may be said of the question propounded, on cross-examination, to the State's witness Gothard.

We entertain the opinion that the confession of defendant made to Gothard was shown to have been voluntary and that the court committed no error in admitting it. It is true, he is shown to have been an officer and armed, but he made no threat or held out any induce-

6

ment. The fact that he was an armed officer and that defendant was under arrest made by him is of no consequence.—*Aaron v. The State*, 37 Ala. 106; *Spicer v. The State*, 69 Ala. 169; *McElroy v. The State*, 75 Ala. 9; *Dodson v. The State*, 86 Ala. 60; *Hornsby v. The State*, 94 Ala. 64; *McQueen v. The State, Ib.* 50; *Fuller v. The State*, 117 Ala. 36.

The fact that the defendant was frightened and apprehended that he would be killed or hanged which he expressed to the witness does not make the confession involuntary in view of the assurance of the arresting officer to the contrary, and that he was only going to take him to jail.—*Young v. The State*, 68 Ala. 569, 580.

In rebuttal of Williams' testimony it was entirely competent for the State to show by the father of deceased that on the afternoon of the killing his son was engaged until late in the evening in hauling household goods from the country to his home and that he was not drinking; and that the place in the country from which he was hauling the goods was in a different direction from Zachie's saloon, and that the road which his son travelled did not pass by the saloon.

This brings us to a consideration of the exceptions reserved to the oral charge of the court. There are a number of them. But the only one insisted upon raises the same question that is raised by certain written charges (numbered 2, 3, 4, and 5), requested by defendant, a disposition of which will decide the merits of this exception. So then, we will postpone a discussion of this point until we come to deal with those charges. However, before considering the written charges, it may be well for us to say that we have examined the other exceptions to the oral charge and find them to be unmeritorious.

The written charges given for the State and refused to defendant were not numbered, but for convenient reference we have numbered them upon the margin of the record, and refer to them by these numbers. Charge 1 requested by defendant and refused is an exact duplicate of one that was given. Besides, it was incorrect and should not have been given because it invaded the province of the jury.

[Seelye v. The State.]

Charges 2, 3, 4, and 5 attempted to invoke the doctrine so often declared by this court that a person attacked in his own dwelling house or place of business is not required to retreat. On the facts of this case the defendant has fallen far short of bringing himself within the protection of this principle. They simply show that he was "flunkeying" around the saloon, whatever that may mean, the owner of which seems to have been operating the gaming tables in the cellar when and where the difficulty occurred. This fact does not show that he was engaged as an employe to operate the tables or to perform any other service as an employe in the cellar. These charges were properly refused and the oral charge on this point was correct.

Charge 6 was a mere argument.

Charge 7, of course, should not have been given.

Each of the charges given at the request of the solicitor asserted correct and familiar propositions of law, and there was no error in the giving of either of them.

Affirmed.