# Kilgore *v.* The State.

## *Indictment for Murder.*

1. *Continuance in discretion of the court.*—The question of the continuance of a cause is one that rests in the sound discretion of the court trying the cause, and is not subject to revision on appeal unless it be shown that the discretion has been abused.

2. *Voluntary statement of witness may be excluded.*—When a witness for the State in a criminal case makes a voluntary statement, not call for by any question of the solicitor, it should be excluded on motion of the solicitor; and the defendant should not be permitted to make such statement the basis for the introduction of rebuttal testimony which would be clearly objectionable without it.

3. *When defendant not permitted to show prior difficulties.*—It is clearly objectionable for the defendant in a trial for homicide to prove matter related to previous difficulties between himself and the deceased, going into the details or particulars of such difficulties, although there was evidence on the part of the State of a difficulty about an hour prior to the homicide, the difficulties offered to be shown by the defendant being other and different ones previous to the one shown by the State and having no connection with the latter.

4. *Evidence proper to impeach defendant when a witness.*—When the defendant in a criminal case testifies as a witness in his own behalf it is competent for the State to offer impeaching evidence on general reputation as in the case of any other witness.

5. *Self-defense, when elements of do not exist.*—Where it is shown in evidence on the trial of a defendant for homicide, that he provoked the difficulty in which the deceased was killed, or that the means of escape by retreating was not wanting to him, or if the evidence does not show that there existed any impending peril to his life or limb, the constituent elements of self-defense do not exist.

6. *Charges erroneous when in homicide.*—A charge which misplaces the burden of proof, and charges which ignore one or more of the constituent elements of self-defense are properly refused to a defendant on trial for homicide.

7. *Charge; when abstract.*—The burden of proof as to the plea of

[Kilgore v. The State.]

self-defense being on the defendant, if there is an absence of
evidence as to one or more of the constituent elements of self-
defense, and the undisputed evidence shows that the defend-
ant provoked the difficulty, a charge is properly refused to the
defendant as abstract which requires an acquittal if the jury
have a reasonable doubt from all the evidence whether he
acted in self-defense or not.

.8. *Elements of murder in the first degree.*—If the killing was pur-
posely done it was willful; and if done by shooting with a gun
with a wickedness or depravity of heart towards deceased it
was malicious; and if determined on, no matter for what
space of time, it must have been premeditated and deliberate.
Premeditation and deliberation are necessarily involved where
the thing done is predetermined.

9. *Defendant when entitled to special venire.*—When a defendant is
put on trial for murder in the first degree he is entitled under
the statute to a special venire from which to select a jury;
and it must affirmatively appear of record that he had such
special *venire.*

10. *Capital punishment cannot be waived in trial for murder.*—The
jury alone under the statute can fix the punishment upon
conviction of murder. The court has no authority to permit
the solicitor by consent of the defendant to waive capital pun-
ishment. Such attempted waiver is an invasion of the pro-
vince of the jury.

APPEAL from the Circuit Court of Fayette.

Tried before Hon. S. H. SPROTT.

The facts in this case are set out in full in the opinion.
A number of charges were requested by the defendant,
but it is unnecessary to copy them all in full. One, 2, 4,
and 8 request acquittal if the jury believe the defendant
was in peril of his life, but they ignore the elements of
necessity to retreat and freedom from fault in bringing
on the difficulty, contained in the doctrine of self-de-
fense. Three and 6 ignore the element of freedom from
fault in causing the difficulty. Charge 5 asserts that the
burden of disproving the plea of self-defense is on the
State. Charge 7 was that if the jury from all the evi-
dence have a reasonable doubt whether the defendant
acted in self-defense or not they should acquit him.
Charge 1 given to the State asserts that the law pre-
sumes malice from the use of a deadly weapon and casts
on the defendant the burden of repelling the presump-
tion unless the evidence which proves the killing shows

[Kilgore v. The State.]

it was perpetrated without malice. Charge 2 given to the State is as follows: "That before the jury can acquit the defendant on the ground of self-defense three essential elements must concur: 1. The defendant must be without fault in bringing on the difficulty, and must not be disregardful of the consequences in this respect of any wrongful word or act. 2. There must have existed at the time, either really or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, imperious, impending necessity to shoot in order to save himself from great bodily harm. 3. And there must have been no other reasonable mode of escape by retreat, or by avoiding the combat with safety." Charge 4 given to the State is as follows: "If the defendant in Fayette county and before the finding of the indictment purposely killed the deceased, William Fulton, by shooting him with a gun, with a wickedness or depravity of heart towards the deceased, and the killing was determined even a moment before the shooting was done, the defendant is guilty of murder in the first degree."

ROBERT F. PETERS, for appellant, cited, *Davis v. State,* 92 Ala. 25; *Walker v. State,* 117 Ala. 85; *Bowles v. State,* 58 Ala. 338; *White v. State,* 111 Ala. 97; *Harrison v. State,* 78 Ala. 5; *McAnnally v. State,* 74 Ala. 9; *Gray v. State,* 63 Ala. 66; *Miller v. State,* 107 Ala. 46; *Henson v. State,* 112 Ala. 41; *Smith v. State,* 68 Ala. 424; *Hurd v. State,* 94 Ala. 100.

CHAS. G. BROWN, Attorney-General, for the State, cited, *Chamblee v. State,* 78 Ala. 467; and to show that the doctrine of self-defense could not be invoked, *Teague v. State,* 25 So. Rep. 209; *Hendricks v. State,* 26 So. Rep. 242; *Hughes v. State,* 117 Ala. 29; *Martin v. State,* 77 Ala. 1; *Jones v. State,* 79 Ala. 23; *Bouldin v. State,* 102 Ala. 79.

DOWDELL, J.—Upon the call of this cause in the trial court, the solicitor having announced ready, the defendant moved for a continuance on account of the absence of witnesses who had been subpœnaed, and upon

the refusal of the court to grant the continuance duly excepted. The question of the continuance of a cause, is one that rests in the sound discretion of the court trying the cause, and is not subject to revision on appeal unless it be shown that the discretion has been abused. There is nothing in the record tending to show any abuse of the discretion exercised by the court in denying the application for a continuance. *Walker v. State,* 117 Ala. 88.

R. P. Cain a witness introduced by the State testified as follows: "I am the sheriff of Fayette county, and was the sheriff in 1889; that immediately after the killing of Fulton, a warrant of arrest was placed in my hands, as sheriff, for the defendant, John Kilgore, charging him with the killing; that diligent search was made in Fayette county for the defendant, that he was not found there and that he arrested him soon afterwards at Cameron, Indian Territory, and brought him back to Fayette county. and that he afterwards arrested defendant a second time in the Indian Territory, about March 1st, 1899." The bill of exceptions states: "The solicitor here asked the court to exclude that part of witness Cain's testimony relating to the second arrest of the defendant, but the defendant by his counsel objected to its exclusion, and consented for it to remain in."

On cross-examination the defendant offered to prove by said witness Cain, that after the defendant was arrested the first time, that defendant was released by other prisoners from jail, and escaped from jail, and remained out only about one day, when he came back and voluntarily surrendered himself to the sheriff. On the objection of the solicitor the court refused to allow the proof to be made, and the defendant excepted.

So far as the bill of exceptions discloses, the statement made by the witness Cain as to the second arrest was voluntary and not called for by any question propounded by the solicitor, and who promptly asked to have it excluded. It is evident from the cross-examination which followed, that the purpose of the defendant in objecting to its exclusion, was that it might serve as the basis for the introduction of rebuttal testimony, which without it would be clearly objectionable. If the

defendant had in the first instance offered the statement as to the second arrest as original evidence on his behalf, and then sought to introduce evidence in rebuttal, which as original evidence would not have been admissible, the rebuttal testimony so offered would have been open to objection. And this was the effect of defendant's objection to the exclusion of the voluntary statement of the witness, and the subsequent attempt on cross-examination to introduce what he claims would have counteracted or diminished the probative force of the statement made by Cain. We think the court ruled correctly in sustaining the objection of the solicitor.

The written showing as to what the defendant expected to prove by his absent witnesses was admitted by the State subject to legal exceptions whenever offered as evidence. The evidence containd in the showings as to the witnesses James Shoulz and M. J. Kilgore, was open to the objection made by the solicitor. The matter sought to be introduced in evidence related to previous difficulties between the defendant and the deceased, going into the details or particulars of such difficulties, which was clearly objectionable. There was evidence on the part of the State of a prior difficulty about an hour prior to the homicide, but the difficulties mentioned in these written showings were other and different ones previous to the one shown by the State, and having no connection with the latter.

The defendant having testified as a witness in his own behalf, this made it competent for the State to offer impeaching evidence on general reputation as in the case of any other witness. The questions put to the impeaching witnesses were properly predicated upon their knowledge of the general character of the witness sought to be impeached, in the neighborhood in which he lived. The court committed no error in overruling defendant's objection to these questions and the answers made to them by the witnesses.

The evidence without conflict shows that on the day of the homicide, about an hour previous to the killing, the defendant went to the woods where the deceased with others was at work riving boards, and that there an altercation in words arose between defendant and de-

ceased, and on the deceased, with a knife in his hand, making towards the defendant, who was on horseback, the defendant rode away. At sundown the deceased and those with whom he was working, quit work and started home, carrying with them their implements of labor, the deceased having on his shoulder a maul and broad-axe. They proceeded together down the public road, and just before reaching a lane which turned off from said road, leading up to the house where the deceased lived while engaged in the employment of riving boards, and which house was situated upon the land of the defendant's father, the defendant, who was at the time in the lot of his father by which the lane led, and being armed with a shot-gun, ordered the deceased to continue up the public road and not to come up said lane. The deceased giving no heed to this order, proceeded up the lane leading to the house where he was then living. When within about fifteen or twenty steps of where the defendant stood in the lot, said lot being separated from the lane by a fence, the defendant again ordered the deceased to stop and not to come any further. The deceased did not stop at the second order, but proceeded on in the direction of the house up the lane, when the defendant fired the fatal shot. Here we will quote from the defendant's own testimony. He says "that he had just gotten into the lot when he saw Fulton (the deceased), Mitchell and others coming up the big road; that he knew they had rented a house from his father in his father's yard, and had been and were staying there. That he stopped within a few feet of the fence separating the lot from the lane, when he saw Fulton coming up the big road, and then called to him to keep on up the road. That he stood in this position until the shooting occurred. That when he first saw Fulton in the road, he was about one hundred and fifty yards or more from him, and that Fulton was then saying nothing to him, and making no demonstration against him. That after he called to Fulton, Fulton said nothing, but entered the lane, and continued walking along with the others up the lane in the direction of where he was standing. That Fulton made no demonstration against him or said anything to him until

he had gotten within about fifteen steps of him (the defendant), and after he had told Fulton to stop, this was when Fulton ran his hand into his pocket and said, 'If you will come out of the lot I will give you a genteel whipping.' Defendant further testified that there was nothing behind him or to the sides of him in the lot to prevent him from moving from the position that he was standing in when he first saw Fulton. The lot was a pretty good sized one with a barn in it some forty or fifty steps away from where the defendant was standing. At the place he, the defendant, was standing in the lot was nearly opposite the gate leading to the house which Fulton was staying in, and only a few feet from the lot fence on the lane side, and in order to go in the gate it was necessary for Fulton to pass along the lane by the point in the lot where he, Kilgore, was standing." It was also shown in evidence without conflict that the defendant did not live with his father, but lived at a different place, and had no right or authority to order the deceased not to come up the lane.

Under this state of the evidence it is patent that the constituent elements of self-defense did not exist. It is evident that the defendant provoked the difficulty, and this of itself would prevent him from invoking the doctrine of self-defense. But in addition to this the evidence does not show that there existed any impending peril to defendant's life or limb, nor was the means of escape by retreating wanting to him.

Written charges requested by the defendant from 1 to 9 inclusive were properly refused by the court. Charge number 5 misplaces the burden of proof. Charges 1, 2, 3, 4, 6 and 8 ignore one or more of the constituent elements of self-defense. Without stopping to further criticise these charges, we cite the case of *Hendricks v. State*, 26 So. Rep. 242, where other authorities on this subject are collated.

The burden of proof as to the plea of self-defense being on the defendant, and there being an absence of evidence as to one or more of the constituent elements of self-defense, and the undisputed evidence showing that the defendant provoked the difficulty, written charge number 7 was abstract and properly refused.

[Kilgore v. The State.]

Written charge number 9, which was the affirmative charge in favor of the defendant as to murder in the first degree, under the evidence in the case is so palpably erroneous as to need no further comment.

Written charges 1 and 2 given at the request of the State assert the propositions of law which have so often been passed upon by this court and held to be good, that it is needless to cite authorities. ·

Written charge number 3 given at the request of the State embraces every constituent element of murder in the first degree as defined by section 4854 of the Code. This charge is substantially the same as the charge passed on in the cases of *Miller v. State,* 107 Ala. 40, and *Wilkins v. State,* 98 Ala. 1. If the killing was purposely done, it was willful; and if done by shooting with a gun with a wickedness or depravity of heart towards deceased, it was malicious; and if determined on, no matter for what space of time, it must have been premeditated and deliberate. Predemitation and deliberation are necessarily involved where the thing done is predetermined.

The defendant was indicted and put on trial for murder in the first degree. This under the statute is a capital offense. The defendant was under the statute entitled to a special *venire,* from which to select a jury to try the case. It must affirmatively appear of record that he had such special *venire* from which to select a jury, otherwise it is reversible error, as has been a number of times decided by this court. The record in this cause does not affirmatively show that the defendant had such special *venire.* The record does, however, show that the solicitor waived the capital punishment, the defendant consenting thereto in open court, and that the presiding judge made an order to that effect upon such waiver.

The jury alone under the statute could fix the punishment upon conviction. The action of the solicitor in making the waiver, and order of the court, although the defendant was consenting. was a clear invasion of the province of the jury, and did not relieve the charge

of the character impressed upon it by the statute, that is, of being a capital felony. The precise question was decided in the case of *Marion Bankhead v. The State* at the present term, where a full discussion will be found, which it is unnecessary to here repeat. For this error the judgment of the circuit court must be reversed and the cause remanded. The defendant will remain in custody until discharged by due course of law.