# McSwean v. The State.

## Carnal Knowledge.

(Decided February 8, 1912.  57 South. 732.)

1. *Criminal Law; Judgment; Capital Case; Waiver; Special Venire.*—A failure to record a waiver of a special venire in a capital case does not invalidate a conviction, as such waiver may be shown by the bench notes made by the trial judge.  (Sec. 7264, Code 1907.)

2. *Same; Service of Indictment.*—Where a special venire and its service has been waived by a defendant, it is not necessary that a copy of the indictment should be served upon the defendant.

3. *Same; Presence of Accused; Presumption.*—Where trial was begun and verdict rendered on the same day a recital in the judgment entry showing accused's presence when the trial began created a presumption that he was continuously present and was present when the verdict was received.

Dowdell, C. J., Mayfield and Sayre, JJ., dissent.

APPEAL from Coffee Circuit Court.

Heard before Hon. H. A. PEARCE.

Henry McSwean was convicted of a capital offense, and he appeals.  Affirmed.

J. A. CARNLEY, for appellant.  The judgment should affirmatively show an order requiring a copy of the indictment against the defendant to be served upon him one day at least before the day set for his trial.—Sec. 7840, Code 1907; *Lomineck v. The State* 39 South. 676. This is mandatory.—*Spicer's Case,* 69 Ala. 159; *Green v. The State,* 160 Ala. 1.  The judgment should also affirmatively show the presence of defendant when the verdict was announced.—*Hayes v. The State,* 107 Ala. 1; *Wells v. The State,* 147 Ala. 142; *Cook v. The State,* 6 Ala. 39.  The judgment should affirmatively show the service of a special venire upon defendant.—Sec. 7263, Code 1907; *Howard v. The State,* 160 Ala. 6; Sec. 32, Acts 1909, p. 318.  The memorandum made by the judge

in his bench notes is no part of the record and can have no effect.—*Winn v. McCraney*, 156 Ala. 630; *Brightman v. Merriwether*, 121 Ala. 602; *Park v. Lide*, 90 Ala. 248.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Original papers are admissible where the final record has not been made up.—*Buffington v. Cook*, 39 Ala. 64; *Wharton v. Thomason*, 78 Ala. 445; *Duncan v. Freeman*, 109 Ala. 185. The bench notes are such papers.— 82 Am. Dec. 172. All such orders are considered as emanating from the court, import absolute verity and estop the parties from disputing their correctness.— *Deslonde v. Darrington*, 29 Ala. 92; *Keith v. Cliatt*, 59 Ala. 408; *Gray v. The State*, 63 Ala. 66. No injury is shown to have resulted to defendant.—*VanDyke v. The State*, 22 Ala. 57; *Curtis v. Gaines*, 46 Ala. 455; *Ex parte Cresswell*, 60 Ala. 378; *Buchanan v. Thompson*. 70 Ala. 401. It is only necessary to show a compliance with the statute or that it had been waived.—Sec. 7263, Code 1907; *Burton v. The State*, 115 Ala. 1; *Parnell v. The State*, 129 Ala. 6. The judgment entry sufficiently showed the presence of the defendant, at least enough to raise the presumption of his continuous presence.— *Snow v. The State*, 58 Ala. 372; *Diggs v. The State*, 77 Ala. 70; *Dix v. The State*, 147 Ala. 70. The defendant could waive and did waive a special venire, and it was not necessary that the special venire or copy of the indictment be served upon the defendant.—*Williams v. The State*, 81 Ala. 1; *Driskill v. The State*, 45 Ala. 21; *Wade v. The State*, 50 Ala. 164; *Tidwell v. The State*, 70 Ala. 33; *Ezzell v. The State*, 54 Ala. 165; *Smith v. The State*, 145 Ala. 17; *Wilson v. The State*, 128 Ala. 17; *Thomas v. The State*, 94 Ala. 74. Counsel cite authorities from other jurisdictions showing the effect of a waiver of statutory requirements.

[McSwean v. The State.]

McCLELLAN, J.—The defendant was convicted of carnally knowing or abusing in the attempt to carnally know a girl under the age of 12 years; and the penalty imposed was 50 years imprisonment.

The judgment entry reads: "This the 30th day of March, 1910, came Claud Riley, special solicitor, who prosecutes for the state of Alabama, and also came the defendant in his own proper person and by attorney, and the said defendant, being duly arraigned upon said indictment, for his plea thereto says not guilty, thereupon came a jury of twelve good and lawful men, to wit, L. M. Bowden, and eleven others, who, being impaneled and sworn, according to law, upon their oaths do say, 'We, the jury, find the defendant guilty and fix his punishment in the penitentiary for fifty (50) years.'" The trial was had and concluded on the day upon which it was set, viz., March 30, 1910; and on that date sentence, conforming to the verdict, was imposed.

In response to certiorari the clerk certifies as follows: "* * * That I find on the trial docket the following bench notes, made in said cause, to wit: 'March 25, 1910, Deft. in open court in person and with his attorney being duly arraigned, pleads not guilty, and his case is set for trial on Wednesday, March 30, 1910, and the defendant in open court and in writing waives special venire for his trial. Written waiver on file.' 'March 30, 1910. J. & V. Guilty and punishment fixed at 50 years imprisonment in the penitentiary.' 'Deft. is sen. to imp. in pen. for 50 years.' I further certify that the above bench notes is all that appears upon the record and proceedings in said cause, and that I do not find any agreement on file waiving special venire."

The crime charged being punishable capitally, the procedure requisite in such cases should, unless waived, have been observed in the trial of this defendant.—

Code, § 7264, provides: "At any time before a special
venire has been drawn for the trial of any capital case,
if the defendant enters a plea of guilty or in writing
waives the right of a special venire, such plea of guilty
or such waiver of special venire shall be entered of rec-
ord, and, in either event, no special jury or venire shall
be necessary for the trial of such case; but the trial of
the cause shall be had and the question of the degree of
guilt must be ascertained and the punishment fixed by
a jury to be selected from the panel of regular petit ju-
rors organized by the court during the week such case
is set for trial, in the same manner as juries are organ-
ized for the trial of felonies not capital; and the state
and the defendant shall be allowed the same number of
peremptory challenges as they are respectively allowed
in the trial of felonies not capital." Had the statute
been complied with, the written waiver would have been
entered of record. However important the observance
of that feature of the statute may be, it is, when ob-
served, but a ministerial act of the clerk of the court.
Its office is to preserve a memorial of the fact that the
prisoner, capitally charged, has waived the special ve-
nire which the law provides. If the waiver has been
filed, the omission of the clerk to comply with this min-
isterial requirement of the statute cannot in the very
nature of the thing avail the prisoner to avoid the pen-
alty the law imposes. It bears no relation to the in-
quiry of his guilt or innocence. He is not prejudiced by
the failure of the clerk to record the evidence of his own
act, namely, his waiver of a special venire. No judicial
action, with respect to the waiver contemplated, is re-
quired by the statute. The court cannot deny the effect
of the waiver, as presented, when the prisoner presents
it. The court is as powerless in that case as when the
prisoner pleads guilty, the other act of the prisoner,

specified in the statute, whereby the provisions of law for special venire are rendered inapplicable, unobligatory in any degree. Hence it is the act of the prisoner capitally charged in waiving the special venire, which is his due, and not that of the court, thus distinguishing that line of decisions in which it is held that bench notes are simply directions to the clerk what judgments and orders should be entered in expression of judicial action of the court, viz.: *Wynn v. McCraney,* 156 Ala. 630, 46 South. 854; *Condon v. Enger & Co.,* 113 Ala. 233, 21 South. 227; *Morgan v. Flexner,* 105 Ala. 356, 16 South. 716; *Baker v. Swift,* 87 Ala. 530, 6 South. 153; *Park v. Lide,* 90 Ala. 246, 7 South. 805; *Brightman v. Meriwether,* 121 Ala. 602, 25 South. 994.

In this instance the fact and form of the waiver appears alone in the bench notes on the trial docket of the court trying this cause. It is urged, in effect, that the bench notes cannot serve the purpose to show a waiver in the premises, in consequence of which the necessity for the special procedure prescribed for capital cases was avoided. To sanction this contention is to ignore the bench notes, is to deny those memoranda any effect whatsoever, and so upon a matter the verity of which the defendant has not disputed and does not dispute or question in any way. Mindful of the purpose and provisions of the statute providing for the waiver, taking into account the confirmatory fact that no objection to being tried without a special venire appears to have been interposed in the court below by the prisoner, and this while represented by skilled counsel, observing the statute impelled duty of the court to pretermit the special venire when the prisoner has waived it, it is clear that the affirmation of fact made in the bench notes cannot be ignored, cannot be disregarded. . Their recitals are at least prima facie true—prima facie correct. In

determining the propriety and validity of amendments nunc pro tunc, such a memorandum has from an early day in our jurisprudence been treated and regarded as, at least, quasi record.—*Harris v. Bradford,* 4 Ala. 214, 221; *Glass v. Glass,* 24 Ala. 468. Such dignity has been accorded that character of memoranda in our judicial processes as that beyond the term in which made final permanent records of causes have been conformed thereby and thereunto. So a discontinuance of a cause has been avoided in consequence of amendment nunc pro tunc supported by such memoranda.—*Yonge v. Broxson,* 23 Ala. 684. And we know, as from common knowledge, that in the actual, final transcription of the minutes of the courts, expressing the rulings upon the pleadings especially, the clerical officers thereof avail, of necessity, of the memoranda—the bench notes. Naturally so, since amendment nunc pro tunc finds its first aid in essential requisite in such quasi records set down by the judge. Accordingly, the fact is shown prima facie that the defendant waived a special venire for his trial.

Did this waiver carry with it the avoidance of the requirement that an order of the court for the service of a copy of the indictment should enter in capital cases, presents the second and major question discussed by counsel. The appellant was tried when the jury law of 1909 (Acts Sp. Sess. 1909, pp. 305, 318, 399) was in force. In section 32 thereof provision was made for special venires in capital cases. It did not repeal the waiver statute before quoted. A pertinent part of that section (32) reads: "Whenever any person or persons stand indicted for a capital felony, the court must on the first day of the term, or as soon as practicable thereafter, make an order commanding the sheriff to summon not less than fifty nor more than one hundred per-

sons including those drawn and summoned on the regular juries for the week set for the trial of the case, and shall then in open court draw from the jury box the number of names required with the regular jurors drawn and summoned for the week set for the trial to make the number named in the order, and shall cause an order to be issued to the sheriff to summon all persons therein named to appear in court on the day set for trial of the defendant and must cause a list of the names of all the jurors summoned for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant by the sheriff, and the defendant shall not be entitled to any other or further notice of the jurors summoned or drawn for his trial nor of the charge or indictment upon which he is to be tried." It readily appears from the special venire feature of the jury law of 1909 that it superseded all other statutes and enactments touching the service of a copy of the indictment on the prisoner. It is apparent that, as provided for in the jury law of 1909, the requirement that the court cause the service of a copy of the indictment on the prisoner is but and only a part of the system prescribed for a special venire—a requirement that is simply and only a spoke in the wheel of the special venire. It is not an independent, distinct, prescription of the law, as now written. Indeed, the term "together" emphasizes the dependence, in contemplation of the lawmakers, of the provision for a copy of the indictment upon that for a copy of the special venire. A different conclusion prevailed here under other statutes, affirming as distinct, independent provisions, disassociated from the detailed provisions now of force with respect to special venires.—See *Spicer's Case,* 69 Ala. 159, among others cited on brief for appellant. Under the

jury law of 1909 the omission to "cause" a copy of the indictment served upon the defendant was not error in any degree, for it was waived when the special venire was waived. Having so waived the legal requirement for the special venire, all incidental prescriptions of the law were likewise rendered unobligatory. His trial was, then, to proceed as in felony cases, not capital.— Code, § 7264.

There is no merit in the suggestion that error must be predicated on the silence of the judgment entry to show the prisoner's presence when the verdict was received. The trial having been begun and concluded and the sentence imposed during the same day, and it appearing from the judgment entry that the defendant was present in the inception of the trial and when the sentence was imposed, it will be presumed that he was present continuously.—*Dix's Case,* 147 Ala. 70, 76, 41 South. 924, and authorities therein cited.

No error being shown, the judgment is affirmed.

Affirmed.

SIMPSON, ANDERSON, and SOMERVILLE, JJ., concur. DOWDELL, C. J., and MAYFIELD and SAYRE, JJ., dissent.

MAYFIELD, J.— (dissenting.)—But for the decision in this case, I would have thought there was no doubt that a judgment of conviction and sentence in a capital case could not be supported on appeal, unless the record proper showed an order of the court, setting the day for trial and directing a special venire for the trial, or a waiver thereof, made in the mode prescribed in the mandatory statutes on the subject. There are scores, if not hundreds, of cases holding to this effect, and none to the contrary except this one. This is certainly a radical departure from all former decisions of

this court upon this subject; and there are many of them which this, in effect; overrules. Heretofore, without exception, this has been said to be as necessary a part of the record, to support a conviction, in a capital case, as the indictment, the verdict, or the judgment. It has been repeatedly held that no one of these can be omitted from the record ·proper without working a reversal. One is no more important than the other. If one can be omitted, then all can be omitted, provided they are shown by parol or the bench notes.

The mandatory statutes require, and the Constitution guarantees, not that these requisites shall exist, but that they shall appear of record proper, and not otherwise. It is therefore just as necessary that these matters appear of record proper, as it is that they exist. They are not matters that can be waived, except those provided for in the statute, and then only in the mode prescribed by the statute, which is that the waiver must be in writing and appear of record proper. These matters of record cannot be dispensed with—not even at the direct request of the accused. He cannot consent to the omission of any of these requisites from the record in a capital case, so as to cure the error. A man cannot legally consent to be tried for a capital offense without an indictment; nor to be convicted without the verdict of a jury required by law; nor to be executed without a judgment and sentence of the law authorizing such execution. These requisites are not subjects of waiver, nor of control by consent or agreement.

The majority in this case have treated a solemn judgment and record of a court authorized to inflict capital punishment as a mere ministerial act of a judicial or clerical officer of the court. If the defects in this record were mere clerical omissions or misprisions, I would readily agree with the majority; but they are not

such errors. They concern matters of record proper, without which there can be no valid judgment or sentence, matters which absolutely admit of no waiver, consent, or substitution, matters the sine qua non of a valid judgment of conviction or sentence in a capital case. It has been repeatedly asserted by this court that these requisites in capital cases are of prime importance to a prisoner in securing his constitutional guaranty that "the right of trial by jury shall remain inviolate." The acts complained of in such cases are acts of the court, not those of the judge or the clerk, and for this reason they have always by all English and American courts been considered parts of the record essential to support the judgments of conviction in such cases, and they must always affirmatively appear from the record itself—not from the bill of exceptions, the bench notes, or memoranda—to have been performed by the court. The forms and the substance of the records in capital cases are thus deeply imbedded in the foundations of our law; and, as has been well said by this and other courts, they ought not to be disregarded, certainly not when the liberty or even the life of the citizen depends upon such record.

As to these matters, it has been uniformly ruled (without a solitary exception, so far as I know) by this court that a prisoner charged with a capital offense who proceeds to trial without objection as to these acts which are required to be performed by the court, and which are required to be made a part of the record, in order to support a judgment of conviction and sentence, does not thereby waive his right to insist upon such defect in the appellate court, although no objection was made and no question raised as to such matters in the lower court. As was said by this court (*Spicer's Case,* 69 Ala. 163), by Somerville, J.: "Unless the proper order had

been made [referring to the order setting a day for the trial, and directing a special venire], no fair field for the exercise of an untrammeled option could be presented. We cannot judicially know that a trial was not the sole alternative to continued incarceration." It was first said by Gipson, C. J., and has often been repeated by this court, in speaking of the necessity of an order setting the day for trial and for a special venire in capital cases, that these forms of records are deeply seated in the very foundations of the law, and, as they conduce to safety and certainty, they surely ought not to be disregarded when the liberty or the life of a human being is at stake. The record in a capital case like this is constituted of the proper and legitimate elements set down in their proper order—elements by the Constitution and the statutes made requisite to support a judgment of conviction and sentence.

As was said by this eminent Chief Justice (*Hamilton v. Com.*, 16 Pa. 133, 55 Am. Dec. 485) : "For it is certainly not the law that all the gossip a clerk or prothonotary writes down on his docket ipso facto becomes the very voice of undeniable truth. The judges of a court of error must determine for themselves, and consequently on facts, instead of sweeping assertions." In speaking of the insufficiency of the record proper in that case, which was attempted to be supplemented by memoranda from the dockets, the same learned Chief Justice remarked: "There is nothing on the docket to show even that the prisoner was present when he was sentenced, except the supplementary memorandum that 'he was present in the court from the time of his arraignment up to the time when the sentence was passed upon him; indeed the whole trial, from its commencement to its termination, was according to law.' " Notwithstanding this memorandum, and the fact that it

was made by the officer required to certify the record, it was held, and properly so (the case being frequently quoted by this court), that it did not form any part of the record, and could not be looked to for that purpose. In the language of Lord Coke: "Records are memorials or remembrances, in rolls or parchments, of the proceedings or acts of a court of justice, and are of such uncontrollable solemnity and verity that they admit of no averment, plea, or proof to the contrary. They are the memorials of the end of strife, when a dispute has been settled by the judgment of the court." As has been well said, if it were otherwise, there would be difficulty to see where litigation would end. A matter of record can be made so only by inserting it in the record.

It was said by the Supreme Court of the United States (*Taylor's Case,* 147 U. S. 695, 13 Sup. Ct. 479, 37 L. Ed. 337) that the best definition of a common-law record in a criminal case, in the American practice, is found in *McKinney v. People,* 7 Ill. 552, 43 Am. Dec. 65, where it is stated that in a criminal case, after the caption stating the time and place of holding the court, the record should consist of the indictment properly indorsed, as found by the grand jury, the arraignment of the accused, the impaneling of the jury, verdict, and judgment of the court. Mr. Chitty, in stating the contents of a record in a case of felony, says: "The record states the session of oyer and terminer, the commission of the judges, the presentment by the oath of the grand jurymen by name, the indictment, the award of the jury process, the verdict, the asking the prisoner why sentence should not be passed on him, and the judgment of death passed by the judges."—1 Chitty, Crim. Law, 719.

Of course, some of these matters are not now appropriate to our system. We have, however, statutes mak-

[McSwean v. The State.]

ing other matters a part of such record, and making
them necessary to support convictions in such cases.
Among these requirements is the order setting the day
for trial, and providing for the special venire from
which the jury to try the case shall be selected. There
is an entire absence from this record of any such order.
This court has repeatedly held that this cannot be dis-
pensed with in a capital case, not even with the consent
or by the request of the defendant. No question as to it
need be raised in the lower court, nor even in this court.
Our statute requires this court to search the records for
error. It does not even require the assignment of errors
by the defendant, nor the filing of any brief calling at-
tention to errors. Being thus by statute required to
search the record for errors, and, if such are found, to
reverse the case, it has been repeatedly decided by this
court that this record proper cannot be supplemented by
the bench notes nor by parol evidence; that the record
itself, alone, must avouch its own verity, declare its
own validity, or confess its invalidity; that other evi-
dence for these purposes cannot be looked to.

How this court can affirm this judgment in a capital
case, in the absence of this part of the record, I am un-
able to understand. The opinion it is true seems to
proceed upon the theory that under the existing stat-
utes the defendant could waive the necessity of the or-
der, setting the day and providing the special venire;
but the bench notes are the only evidence relied on to
show such waiver. In this I think my Brothers have
fallen into grave error, for the reason that the bench
notes are not a part of the record, and cannot be made
so by this court. They are not a part of the record of
the lower court, and are not intended to be such, but are
mere memoranda, for the aid of the court and of the
clerk, in writing up the judgment and making the rec-

ord proper. They are no more a part of the record proper to support a capital sentence than the indorsements or memoranda of a grand jury upon their docket to the effect that a certain indictment was found or not found would be an indictment. Such bench notes, standing alone, are not appropriate matter for the record proper, nor for the bill of exceptions. They may be looked to in making up the record proper or the bill of exceptions, but per se are not a part of either; and, of course, cannot be considered to vary, control, add to, or take from either the record proper or the bill of exceptions. They are often looked to or used as evidence in amending judgments nunc pro tunc; but, even after a judgment is amended in this manner, the bench notes themselves do not become a part of the record, but remain merely evidence thereof.

It has been repeatedly held by this court that a defendant cannot waive this order of the court setting the day for his trial and ordering the special venire. The absence of such order will work a reversal, though the defendant not only consented to the omission, but requested a trial by the regular venire for the week, and though he was acquitted of murder by being convicted of manslaughter. And his case must be reversed on appeal, though no question was raised as to the omission in either the lower court or this court.—*Bankhead v. State,* 124 Ala. 14, 26 South. 979; *Kilgore v. State,* 124 Ala. 24, 27 South. 4. It is true that section 7264 of the Code was not in effect when the *Bankhead* and *Kilgore Cases, supra,* were decided; but it was not the intention of the lawmakers; nor is it the effect of that section, to dispense with the order required to be made by section 7263 of the Code, except in the cases and in the manner prescribed by section 7264. This section merely provides that no special jury or venire shall be neces-

sary for the trial of such cases, if before the special venire has been drawn the "defendant enters a plea of guilty or in writing waives the right of a special venire," stipulating that "such plea of guilty or such waiver of special venire shall be entered of record." Consequently it is just as necessary that this plea of guilty or this waiver in writing be entered of record as it is that the order shall be made setting the day for trial and for the special venire. The statute is not susceptible of any other construction, and there is no pretense in this case that such a plea of "guilty" was filed, or that such waiver was entered of record. On the other hand, the record proper absolutely refutes any such presumption, for the reason that it shows a plea of "not guilty," and there is no mention therein of his having waived a special venire.

I think that the record of this court in the concrete case bears out my position as to the insufficiency of the record to support a judgment of conviction and sentence. At a former term of this court, on a call of this case, it was contended that, because of this defect in the record, a certiorari should issue to the trial court to send up a complete record, which writ was awarded; and in response thereto the clerk of that court certified to us that the record was complete, that the only thing tending to show a waiver of a special venire was certain bench notes upon the trial docket, which, as shown above, cannot be considered by this court as part either of the record proper or of the bill of exceptions. It is matter foreign to the record in this court, whatever effect might be given to such notes, in the lower court, on an application to amend the judgment nunc pro tunc. I submit that it is a reasonable presumption that if the record could have been amended in the court below, so as to support the judgment, it would have been so

amended, and, as amended, would have been certified to us in response to the certiorari issued for that purpose.

I am aware that there is much complaint in these days against appellate courts on account of what is termed "reversals on technical errors." To many this defect may seem a technical error; but, if so, it is not the fault of this court nor of any other court. The fault is in the law, which it is the duty of the courts, not to make, but to construe and declare. As answering such complaints, the words of Gipson, C. J. (*Commonwealth v. Lesher,* 17 Serg. & R. [Pa.] 164), are very apt, and his language has been several times quoted in the decisions of this court. In speaking of the advantages which the law has conferred upon the defendant in criminal cases, he says: "We can have nothing to do with the unreasonableness of this particular advantage. Our jurisprudence abounds with unreasonable advantages enjoyed by the accused. The least slip in the indictment is fatal. A new trial cannot be awarded after an acquittal produced by the most glaring misdirection, and the prisoner is to be acquitted wherever there is a reasonable doubt of his guilt. These and many other unreasonable advantages the law allows on principles of humanity or policy; and, if the Legislature chooses to throw in the full and exclusive benefit of peremptory challenges, who can object? No one is more thoroughly convinced of the mischievous consequences of the act of the assembly in practice and the abstract propriety of the objection to the juror here, or is more desirous of seeing the common-law remedy restored by the proper authority. But feeling, as I do, a horror of judicial legislation, I would suffer any extremity of inconvenience, rather than step beyond the legitimate province of the court, to touch even a hair of any privilege of a prisoner on trial for his life. That

[McSwean v. The State.]

Chief Justice argued very ill, who, in a capital case, admitted a jury not freeholders, saying, 'Why may we not make precedents to succeeding times, as well as those who have gone before us have made precedents to us?' Such an occurrence in the trial of Algernon Sydney is spoken of in terms of indignation. Were the judges to set the law to rights as often as it should differ from their ideal standard of excellence, it is a hundred to one that their corrections would not hit the taste of those who came after them; and we should have nothing but corrections, while there would be no guide in the decision of causes but the discretion of fallible judges in the court of last resort, and no rule by which the citizen might beforehand square his actions. 'The discretion of a judge,' said a great English constitutional lawyer, Lord Camden, 'is the law of tyrants; it is always unknown; it is different in different men; it is casual and depends upon constitution, temper, and passion. In the best it is oftentimes caprice; in the worst, it is every vice, folly, and passion to which human nature can be liable.' I concede it to be one of the excellencies of the common law that it admits of perpetual improvement by accommodating itself to the circumstances of the age. But every beneficial change has been by gradations so slow as to be absolutely insensible; and to prevent even those by whom it was wrought from being conscious of it." The remarks of Chief Justice Chilton, in *Noles' Case,* are apt in this connection. That was a capital case, in which the defendant was sentenced to be hanged for murder, and the case was reversed solely upon the ground of a defective warrant, under which the defendant was arrested when he committed the homicide for which he was tried. In concluding the opinion, Judge Chilton said: "We are aware that this looks like a technical ground upon which to reverse a

cause of this grave importance; but it is our duty to de-
cide the law irrespective of consequences, and, being
satisfied that the warrant is void, we have no alterna-
tive but to reverse the sentence and remand the cause
that the prisoner may be· again tried."—24 Ala. 672,
697.

If criminal cases were reversed on appeal only when
necessary to prevent the punishment of innocent per-
sons, no ground of reversal, if legal, would ever be con-
sidered technical by a just and fair people. It is be-
cause cases are of necessity often reversed when, ac-
cording to public opinion, the defendant was unques-
tionably guilty, and had received nothing but a just
sentence. It is such cases as these that cause the pub-
lic to complain of reversals upon technical errors. But
here no fault can be justly ascribed to the courts. They
are to construe and declare the law which casts its pro-
tection over all persons alike. The fact that a man has
committed a crime does not diminish his right to the
protection which the law affords him. The innocent
man, equally with the guilty, is subject to arrest, trial,
and punishment. If both are convicted, the law pun-
ished both, and, if acquitted, both go free. Before
either can legally be made to suffer for a crime, he must
be arrested and detained in the same meshes which the
law has provided. The innocent and the guilty must be
proceeded against alike, step by step, according to the
rules and forms which the Constitution, the statutes,
and the common law have ordained. The law's forms
in such cases must be pursued, or its penalties cannot
be imposed. An innocent man, who, having been im-
prisoned in due form, breaks prison, commits as great
an offense in the eyes of the law as if, being guilty, he
thus escapes custody. On the other hand, a guilty man,
no less than an innocent one, may refuse to be commit-

[McSwean v. The State.]

ted to prison on a warrant not conforming to the law.
The law must treat all alike, whether innocent or guil-
ty, until the judgment of the law has been pronounced
upon them. An innocent man has no more rights in
arrest, detention and conviction than has the guilty
man. The latter in a court has the same right to pro-
test the proceedings against him that he has to declare
his innocence. In passing upon the question whether
or not the record on appeal is sufficient to support a
judgment of conviction and sentence in a capital case,
the question whether the defendant is guilty or inno-
cent is a matter of no concern to the appellate court.
Its duty is the same in either case. It is the court's
business to see that he be not convicted except in ac-
cordance with the rules of procedure which the law pre-
scribed, and to see that that judgment is executed if he
has been so convicted and sentenced.

In my opinion appellate courts cannot afford to dis-
regard the forms and the sufficiency of records in capi-
tal cases to support the judgments and sentences im-
posed. It has been well and truly said that these forms
are conducive to the liberty and safety of the citizen.
They are created for that purpose, and the principle
has been resolutely maintained, both in England and in
America, by the most distinguished jurists of these
countries. It is true that, when instituted, they were
intended to prevent encroachments upon the crown, as
well as upon the liberty of the people in times of polit-
ical persecution. These forms were brought across the
water by our fathers, and claimed as a part of their
heritage of the common law of England; and, while we
have abandoned many of the common-law forms which
were unsubstantial, we have never abandoned those
which relate to the trials affecting the life and liberty
of the citizen. Our Constitutions guarantee them, our

statutes declare them, and they still live, to protect the life and liberty of the citizen. It is very true that, if we were allowed so to do, we might as individuals safely presume that the defendant had a fair and impartial trial in the trial court, that he there waived the rights secured to him, which the record fails to show that he so waived, and that his trial was in all things right; but, sitting here as a court, we can only look to the record, to this judgment and this record, which will be regarded as a precedent for all time, and, if we thus allow presumptions to be indulged, to supply omissions of these matters by the Constitution and the statutes required to be recorded, it will soon be deemed scarcely necessary to show by the record any of the important safeguards which the Constitution and statutes and the common law have so long and so strongly asserted as a shield of the liberty and life of the citizen. It will not do to say that these forms were intended only to protect the citizen against the despotism of crowns and tyrants; that he needs no such forms to protect him in this state during these times. It has been well said by a great jurist that there is no despotism so terrible, so cruel, and so unrelenting as that of the people themselves in times of great tumult and excitement, when passion and rage are stirred. These safeguards, these stern and inflexible rules of law, are, during such times of excitement, the only protection that the accused citizen has against mock trials and judicial lynchings. In this connection it may be well to remember the words of Blackstone, when comparing the English law with that of other countries. He said: "It will afford pleasure to an English reader, and do honor to the English law, to compare it with that shocking apparatus of death and torment to be met with in the criminal codes of almost every other nation in Europe.

[McSwean v. The State.]

And it is, moreover, one of the glories of our English law that the species, though not always the quantity or degree, of punishment is ascertained for every offense; and that it is not left in the breast of any judge, nor even of a jury, to alter that judgment, which the law has beforehand ordained for every subject alike, without respect of persons; for, if judgments were to be the private opinions of the judge, men would then be slaves to their magistrates, and would live in society without knowing exactly the conditions and obligations which it lays them under. And, besides, as this prevents oppression on the one hand, so, on the other, it stifles all hopes of immunity or mitigation, with which an offender might flatter himself, if his punishment depended on the humor or discretion of the court."—2 Cooley's Bl. 376.

I am fully persuaded that the concrete error into which my Brothers have fallen in this case is that they have failed to distinguish the record in this case from those in cases like *Paris v. State,* 36 Ala. 232. In my opinion they have failed to observe this distinction pointed out in *Spicer's Case* cited and quoted from in the majority opinion. This distinction was again pointed out by Somerville, J., in *Sylvester v. State,* 71 Ala. 24, where he says: "There are few if any preliminary proceedings prior to the verdict of more importance in criminal trials than the legislative details securing the right to have a fair and impartial jury. Of these the most vital in many cases often is the order appointing a day for the trial and fixing the number of jurors to be summoned. Such an order should never be made in the absence of a defendant, and we must not presume he was present when the record omits to show the fact by positive affirmation. We believe it to be the sounder rule, and the one more in harmony with the past decis-

ions of this court on similar questions, that the defect presented for our consideration is a reversible error, and that the failure of the prisoner to object was no waiver. The distinction between the principle settled here, and that in *Paris's Case,* 36 Ala. 232, is fully pointed out in *Spicer v. State,* and nothing need be added on that point. The two decisions are in perfect harmony." In the case last mentioned the judgment of conviction was reversed, not because no order at all was made (which is a fact in this case), but because that order failed to affirmatively show that the defendant was personally present in court when the order was made, and although the prisoner failed to object to such order or proceedings upon the trial in the lower court. Since he could not be held to have waived the privilege of being present when the order was made, surely he ought not to be held to have waived the making of any order in the premises.

This same strictness as to what the record proper should show in order to support a judgment of conviction and sentence in a capital case has been uniformly adhered to by this court as to many other parts of the record proper. This court has not only uniformly reversed, because of the absence of material parts of the record, but repeatedly reversed because of mere defects, somtimes very slight, as in the last-quoted case, where the record failed to show the appearance of the prisoner when the case was set for trial, or because of its failure to show his presence at the rendition of the verdict, or to show that the trial judge asked him if he had anything to say as to why the senence of the law should not be pronounced upon him, or because it failed to show that the jury by their verdict determined the degree of murder as the statute requires, notwithstanding the verdict found him guilty as charged in the indict-

ment, and fixed a punishment which was apt only as to one degree of murder. In another case, where the murder was committed by poisoning, and the indictment so alleged, the statute making murder by that means murder in the first degree, yet the judgment of conviction was reversed because of a mere defect in the record.

For these reasons, and many others which might be mentioned if time and space allowed, I am fully persuaded that my Brothers are in error in their decision of this case.